IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
Clarksburg Division

| | |
|---|---|
| **PAOLO FARAH,** )<br>)<br>*Plaintiff*, )<br>)<br>v. )<br>)<br>**WEST VIRGINIA UNIVERSITY** )<br>**BOARD OF GOVERNORS,** )<br>1500 University Ave. )<br>Morgantown, WV 26506, )<br>)<br>*Serve Registered Agent*: )<br>)<br>    Patrick Morrisey, Esq., )<br>    Attorney General )<br>    State Capitol Complex )<br>    Bldg. 1 Room E-26 )<br>    Charleston, WV 25305, )<br>)<br>*Defendant.* )<br>) | ELECTRONICALLY<br>FILED<br>12/9/2022<br>U.S. DISTRICT COURT<br>Northern District of WV<br><br>Case No.: 1:22-CV-153 TSK<br><br>**JURY TRIAL DEMANDED** |

**CIVIL COMPLAINT FOR EQUITABLE**
**AND MONETARY RELIEF AND DEMAND FOR JURY TRIAL**

Plaintiff Paolo Farah, by and through undersigned counsel, brings this suit against Defendant West Virginia University Board of Governors for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII").

**JURISDICTION AND VENUE**

1.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because Farah's federal discrimination claim arises under the laws of the United States, specifically Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

2. This Court has personal jurisdiction over Defendant West Virginia University Board of Governors because it has a business presence in West Virginia and/or otherwise conducts business and/or provides services in West Virginia.

3. Venue is proper in this Court and division pursuant to 28 U.S.C. § 1391(b) because the events that gave rise to this complaint occurred in this district and all parties reside in this division.

## PARTIES

4. Farah is originally from Italy and is of Italian national origin. He is Jewish, and at all times relevant to this Complaint he has lived in Monongalia County, West Virginia and has been employed as a professor by Defendant in Morgantown, West Virginia.

5. Defendant West Virginia University Board of Governors (the "Board") was created by the West Virginia Legislature as the governing body of the West Virginia University System, including West Virginia University ("WVU"), a public university located in Morgantown, West Virginia.

## ADMINISTRATIVE PREREQUISITES

6. Farah filed a charge of discrimination against WVU on the basis of religion and national origin with the Equal Employment Opportunity Commission on September 16, 2021, and he amended his charge on February 14, 2022.

7. Farah received a Notice of the Right to Sue for his charge of discrimination from the EEOC on September 12, 2022.

## FACTUAL ALLEGATIONS

8. Farah was born and raised in Italy and speaks with an Italian accent.

9. In or about January and February 2014, WVU offered Farah a position as an assistant professor of Public Administration in the Eberly College of Arts and Sciences, John D. Rockefeller IV School of Policy and Politics, Department of Public Administration starting from August 2014. Farah accepted the offer.

10. Due to a delay in processing Farah's visa, from February and August 2014, WVU offered Farah two different contracts to sign simultaneously: a position as visiting assistant professor for the 2014-2015 academic year, and a tenure-track assistant professor position starting in the 2015-2016 academic year.

11. Associate Provost C.B. Wilson informed Farah that WVU would permit him to request credit for the first year as Visiting Assistant Professor to become part of his Tenure-Track Assistant Professor position.

12. Farah accepted the tenure track assistant professor position because WVU promised him more research time and a tenure promotion in or about 2017. The dean of WVU's Eberly College of Arts and Sciences, Bob Jones and his former chair John Kilwein, specifically told Farah that his international experience would count towards his tenure track.

13. Farah is the only non-American in the Department of Public Administration, and WVU hired Matthew Barnes, a United States born male, at the same time as Farah. Margaret Stout, another professor at WVU, told Farah that the Department of Public Administration preferred Barnes to Farah.

14. After starting his job in August 2014, the Department of Public Administration invited Barnes to several social events, meetings, and gatherings, but it did not do the same or as often with Farah.

15. In or about February 2017 the new department chair, Maja Holmes, denied Farah's application for tenure. Holmes and the Departmental Faculty Evaluation Committee told Farah that his international experience did not, in fact count, towards tenure.

16. Farah filed a grievance in response to the denial, and he ultimately resolved his grievance because the settlement allowed him to apply for tenure in 2019 and extended his work visa so that he did not have to leave the U.S. before his son's impending birth.

17. WVU finally awarded tenure to Farah on or around May 15, 2020.

18. In or around April 2021, Farah complained to Holmes about her mocking his accent after she made a comment that Farah "miscommunicated" something concerning a student internship policy, when in fact Farah was given by Holmes the wrong information.

19. Farah also reported that Farah's colleagues asked him the origins of his last name, that it did not sound Italian, but Farah had also informed Kilwein of his Jewish background.

20. Farah also complained that WVU employees criticized Farah for taking time to visit his family in Milan, Italy, while Stout, an American, would visit her family in Arizona without being criticized.

21. In addition, WVU's Department of Public Administration Faculty Evaluation Committee rated Farah's performance as worse than that of his non-Jewish and American colleagues, despite his consistent performance and accomplishments.

22. WVU staff Karen Kunz, Stout, Plein, and Holmes also sharply criticized Farah's work and routinely removed his contributions to department projects and tasks.

23. On November 2, 2020, while discussing Farah's performance evaluation, Stout told Farah that, "the Department of Public Administration Faculty Evaluation Committee wanted to make you hate being at WVU so much that you would want to leave by yourself."

24. Consequently, WVU awarded smaller salary increases to Farah than it did to his similarly situated American born colleagues.

25. Further, WVU consistently removed Farah from department communications and newsletters, giving the impression to those reading the newsletter that Farah no longer worked for WVU.

26. WVU also limited Farah's ability to use paternity leave or modify his duties to allow more time with his newborn children. WVU did this by either not informing Farah of his ability to take leave or modify his duties, or outright delaying or refusing to allow it on multiple occasions, including the birth of Farah's two sons in summer of 2018 and 2021, despite allowing Farah's American colleagues to take such leave when it was needed.

27. Despite having a policy allowing leave for "significant personal circumstances," WVU did not inform Farah or outright refused to allow Farah to modify his work schedule or take leave in order to grieve the two miscarriages he and his spouse suffered in 2020, despite allowing Farah's American colleagues to take such leave when it was needed.

28. WVU's Energy Institute sent Farah an email in or about 2019 identifying a grant opportunity opened by the United States Energy Association ("USEA") called "Project Beginning Onward." The grant would initially result in $450,000 of funding from the United States Department of Energy.

29. Simultaneously, Holmes sent Farah an email advising him to put together a grant proposal because it was a "perfect" opportunity that fit Farah's "expertise and research."

30. Farah became the WVU principal investigator on the grant, and Holmes told Farah to speak with Sam Taylor, the Assistant Director of the Energy Institute and overseer of WVU's grant approval process.

31. Taylor did not have his PhD and was in an administrative rather than academic position, and he advised Farah that the University of Wyoming ("UW") was a partner in the grant and that strategically it would be best if UW took the lead on the project instead of WVU.

32. Taylor also told Farah to speak with Tara Righetti, a UW professor, to assist with the grant proposal. Righetti invited Kris Koski, UW employee, to join the project.

33. Taylor also invited Jesse Richardson, a professor in WVU's College of Law, to assist with the grant proposal.

34. Farah, Taylor, Richardson, Righetti and Koski submitted the grant application on November 9, 2019, and in or around January 2020, UW received confirmation that the USEA approved the application but wanted the team to make several changes to the proposal.

35. UW told Taylor that USEA approved the application with the understanding that Taylor would inform everyone involved at WVU, but Taylor did not tell Farah that the grant application was approved until one or two weeks after others at WVU learned of the approval.

36. WVU's team had begun to work on the project by the time Farah learned of the approval, and WVU's team excluded Farah from key communications and meetings even though Farah was the principal investigator.

37. Even though the WVU team excluded Farah, Taylor, Richardson and Righetti exchanged emails declaring that Farah was "missing in action" and unresponsive. Richardson also called Farah a "total jackass" in these emails. They also suggested that he was lazy, that his work product was a "mess" and "crap," and he was only participating in the project for the money. They have also suggested that members of the project give Farah "some rope so he will hang himself."

38. When the grant was approved Taylor told Farah that the funding intended to go to Farah should instead go to Richardson. Taylor pressured Farah to accept this change by yelling at him during the call. Farah refused to have Taylor move funding meant for Public Administration graduate students to Richardson and the College of Law. Farah told Taylor that he did not have the authority to shift the USEA/Department of Energy funding himself. Taylor later described his call with Farah in an email to Righetti dated January 22, 2020, as "wrangling" over a "budget revision."

39. In or around January 2020, Farah received an email from Cody Stewart, Taylor's assistant, advising that he and Taylor had shifted Farah's funding to Richardson. When Farah complained to Taylor, Taylor submitted a "correction" that restored funding to Farah but removed him as WVU principal investigator for this project. Taylor, through Stewart, demoted Farah to the role of investigator and promoted himself to the role of principal investigator.

40. Stewart claimed to Farah that the WVU team believed that it was a mistake that Farah was ever designated as the WVU principal investigator. Stewart further explained to Farah that Taylor being named as principal investigator was necessary because the USEA project involved multiple departments at WVU.

41. However, Farah knew that the true practice for research projects is for academics with substantive knowledge to be named principal investigator, and that Taylor had no relevant experience in any of the fields necessary to be principal investigator for the USEA project. Taylor would not acquire his PHD until April 7, 2022.

42. Farah subsequently learned that the USEA grant was the only project at WVU with Taylor listed as principal investigator or WVU project director. Another professor, Timothy

Carr, confirmed to Farah that WVU usually only provided Taylor with very limited clerical work and management on research projects, not the role of principal investigator.

43. The WVU team withheld from Farah information relevant to the completion of the project for the next four months, excluded him from meetings with the USEA, and excluded him from communications concerning the handling of the project.

44. On or around April 23, 2020, Richardson called Farah a "problem child in the department" in email exchanges with Righetti and Taylor.

45. On or around April 24, 2020, Righetti sent Farah a letter written by Richardson advising that the WVU team was removing him from the USEA project team entirely.

46. In its correspondence the WVU team criticized Farah's drafts, but it did not reference his American coworkers' drafts. Relevantly, the UW and WVU team did not criticize Richardson's drafts even though Richardson admitted that he plagiarized large portions of his drafts from another source because he "could not summarize it better" than the original author.

47. Further, Righetti had communicated to Farah that his initial work was only meant to set expectations, and these were only drafts. However, Righetti's letter removal Farah from the USEA project stated that Farah's draft needed to be fit for publication, and was not.

48. Soon after, in April 2020, UW officially named Taylor the WVU principal investigator, formalizing what had been *de facto* true since January.

49. Throughout the changes that WVU made to the USEA project between January and April 2020, there was no record of WVU seeking prior permission or authorization from USEA or the Department of Energy to make changes to the project's budget allocations and personnel, which is expected and required for research projects with federally sourced funds.

50. As the direct and proximate result of the WVU team's actions, Farah lost all the funding he was set to receive for his department for the student stipends which went to Richardson and the WVU Law School, as well as additional renumeration, which went to Taylor as Farah's successor as WVU principal investigator, Taylor.

51. As a result of Defendant's unlawful acts, Farah has suffered economic and non-economic damages and will continue to suffer damages into the future.

## COUNT I
### Discrimination Based on National Origin/Race
### Title VII of Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 *et seq.*

52. Farah hereby incorporates the allegations set forth in the foregoing paragraphs as though fully alleged herein.

53. Defendant is an "employer" as defined in 42 U.S.C. § 2000e.

54. Farah is an "employee" as defined in 42 U.S.C. § 2000e.

55. Farah is of Italian national origin.

56. Defendant discriminated against Farah based on his national origin when it gave preferential treatment to United States born professors over Farah, criticized Farah's work more heavily than his United States born colleagues, called Farah a "total jackass" and dismissive remarks about his foreign accent, kept Farah uninformed on essential departmental information, and on a grant project he was the principal investigator, and removed Farah from the grant project for unsupported reasons.

57. Defendant took these actions against Farah based, in whole or in part, on Farah's national origin.

58. Farah has exhausted his administrative remedies.

59. As a result of Defendant's unlawful national origin discrimination, Farah has suffered economic and non-economic damages.

## COUNT II
### Discrimination Based on Religion
### Title VII of Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 *et seq.*

60. Farah hereby incorporates the allegations set forth in the foregoing paragraphs as though fully alleged herein.

61. Farah is Jewish, and Defendant discriminated against Farah based on his religion when it gave preferential treatment to non-Jewish colleagues, criticized Farah's work more heavily than his non-Jewish colleagues, called Farah a "total jackass" and made dismissive remarks about his accent, kept Farah uninformed on essential departmental information, and on a grant project he was the principal investigator, and removed Farah from the grant project for unsupported reasons.

62. Defendant took these actions against Farah based, in whole or in part, on Farah's religion.

63. Farah has exhausted his administrative remedies.

64. As a result of Defendant's unlawful discrimination based on religion, Farah has suffered economic and non-economic damages.

### PRAYER FOR RELIEF

Based on the foregoing, Farah respectfully requests that she be awarded the following relief:

a. Judgment against the Defendant in the amount of economic damages, compensatory damages and liquidated damages to be determined at trial;

b. Pre-judgment interest;

c. Lost wages;

    d.  Promotion, or other equitable relief;

    e.  Economic damages including front pay and back pay;

    f.  Compensatory damages;

    g.  Reasonable attorneys' fees and costs of this action; and

    h.  Any other relief this Court deems just and proper to award.

## JURY DEMAND

Farah requests a trial before a jury.

Respectfully submitted,

/s/ Drew M. Capuder
Drew M. Capuder, Esq.
Capuder Fantasia PLLC
1543 Fairmont Avenue, Suite 101
Fairmont, WV 26554
(304) 333-5261
(681) 404-6800 (Fax)
dcapuder@capuderfantasia.com
*Counsel for Plaintiff*

R. Scott Oswald, *pro hac vice to be filed*
Adam Augustine Carter, *pro hac vice to be filed*
The Employment Law Group, P.C.
1717 K Street NW, Suite 1110
Washington, D.C. 20006
(202) 261-2806 (telephone)
soswald@employmentlawgroup.com
acarter@employmentlawgroup.com