IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

PAOLO FARAH,

          Plaintiff,

    v.                                          CIVIL NO. 1:22-CV-153
                                                        (KLEEH)
WEST VIRGINIA UNIVERSITY
BOARD OF GOVERNORS,
SAMUEL TAYLOR,
CODY STEWART,
JESSE RICHARDSON,
L. CHRISTOPHER PLEIN,
KAREN KUNZ, and
MAJA HOLMES,

          Defendants.


MEMORANDUM OPINION AND ORDER
ADDRESSING MOTION TO STRIKE AND PARTIAL MOTION TO DISMISS
_____

     Pending before the Court is a motion to strike and partial
motion to dismiss.  For the reasons discussed herein, the motion
to strike is **GRANTED IN PART** and **DENIED IN PART**, and the partial
motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**.

### I.    BACKGROUND

     On March 3, 2023, the Plaintiff, Paolo Farah ("Plaintiff"),
filed his *First Amended Civil Complaint for Equitable and Monetary
Relief and Demand for Jury Trial* (the "Amended Complaint") against
the Defendants, the West Virginia University Board of Governors
("WVU"), Samuel Taylor ("Taylor"), Cody Stewart ("Stewart"), Jesse
Richardson ("Richardson"), Maja Holmes ("Holmes"), Karen Kunz

**FARAH V. WVU**                                                    **1:22-CV-153**

**MEMORANDUM OPINION AND ORDER**
**ADDRESSING MOTION TO STRIKE AND PARTIAL MOTION TO DISMISS**

("Kunz"), L. Christopher Plein ("Plein"), Corey Colyer ("Colyer"), and Lisa DeFrank-Cole ("DeFrank-Cole") (together, "Defendants"). Plaintiff brings employment discrimination claims against Defendants, all of whom are affiliated with West Virginia University. Currently pending is *Defendants' Motion to Strike Allegations and Partial Motion to Dismiss Amended Complaint* [ECF No. 25]. The motions are fully briefed and ripe for review. Colyer and DeFrank-Cole were dismissed from the case on May 24, 2023 [ECF No. 36].

**II.  FACTS**

For purposes of analyzing the motion to dismiss, the Court assumes the following set of facts, taken from the Amended Complaint, to be true. Plaintiff is originally from Italy, is of Italian national origin, and speaks with an Italian accent. Am. Compl., ECF No. 10, at ¶¶ 4, 9. He is also Jewish. Id. ¶ 4. Taylor, Stewart, Richardson, Holmes, Plein, and Kunz are employees of WVU. Id. ¶ 6. Plaintiff filed a charge of discrimination against WVU on the basis of religion and national origin with the Equal Employment Opportunity Commission ("EEOC") on September 16, 2021. Id. ¶ 7. The charge was amended on February 14, 2022. Id. He received a Notice of the Right to Sue from the EEOC on September 12, 2022. Id. ¶ 8.

## MEMORANDUM OPINION AND ORDER
### ADDRESSING MOTION TO STRIKE AND PARTIAL MOTION TO DISMISS

In or about January and February 2014, WVU offered Plaintiff a position as an assistant professor within the Department of Public Administration, starting in August 2014. Id. ¶ 10. Plaintiff accepted the offer and, in doing so, signed two contracts simultaneously: a position as a visiting assistant professor for the 2014-2015 academic year, and a position as a tenure-track assistant professor beginning in the 2015-2016 academic year. Id. ¶¶ 10-11. Plaintiff was told that he could request credit towards his tenure-track position for his first year as a visiting assistant professor. Id. ¶ 12. When he accepted the offer at WVU, Plaintiff declined a "higher academic position" at a different university because WVU promised him more research time and a tenure promotion on or about 2017. Id. ¶ 13. He was told that his international experience would count toward his tenure track. Id.

Plaintiff is the only non-American in the Department of Public Administration. Id. ¶ 14. WVU hired Matthew Barnes ("Barnes"), a male born in the United States, at the same time as Plaintiff, even though Barnes had not completed his Ph.D., which was required. Id. Margaret Stout ("Stout"), another professor at WVU, told Plaintiff that the Department of Public Administration preferred Barnes to Plaintiff. Id. Beginning in 2014, the Department of Public Administration invited Barnes to social events, meetings, and gatherings, but did not invite Plaintiff. Id. ¶ 15.

3

### MEMORANDUM OPINION AND ORDER
### ADDRESSING MOTION TO STRIKE AND PARTIAL MOTION TO DISMISS

In or about February 2017, Holmes, the new department chair, denied Plaintiff's application for tenure.  Id. ¶ 16.  Holmes and the Department Faculty Evaluation Committee ("FEC") told Plaintiff that his international experience did not count toward his tenure. Id.  At the time, Plaintiff's publications outnumbered those of his four departmental colleagues combined.  Id. ¶ 17.  Plaintiff filed a grievance about the denial of his tenure application and ultimately resolved it via settlement.  Id. ¶ 18.[1]

Pursuant to the Settlement Agreement, WVU extended Plaintiff's critical year to apply for tenure to the 2019-2020 academic year.  See Settlement Agreement, ECF No. 30, at ¶ 3 (sealed).  In exchange, Plaintiff withdrew his grievance and agreed to waive and forever release WVU from any claims arising out of his employment.  Id. ¶ 5.  WVU awarded Plaintiff tenure on or around May 15, 2020.  Am. Compl., ECF No. 10, at ¶ 19.

In or around April 2021, Plaintiff complained to Holmes and a dean at WVU about an instance when Holmes mocked his accent and

---

[1] Defendants attached the Settlement Agreement and Release as a sealed exhibit to their motion. As it is an authenticated document integral to the allegations in the Amended Complaint, the Court agrees with Defendants that it can be considered without converting the motion into one for summary judgment.  See Occupy Columbia v. Haley, 738 F.3d 107, 116 (4th Cir. 2013); see also Price v. Equifax Info. Servs., No. 5:19-CV-00886, 2020 WL 2514885, at *5 (S.D.W. Va. May 15, 2020) (considering settlement agreement at motion to dismiss stage).

**MEMORANDUM OPINION AND ORDER**
**ADDRESSING MOTION TO STRIKE AND PARTIAL MOTION TO DISMISS**

commented that Plaintiff had "miscommunicated" something.  Id. ¶ 20.  Plaintiff's colleagues had also asked him the origins of his last name, commenting that it did not sound Italian, and he had informed them that he is Jewish.  Id. ¶ 21.  WVU employees further criticized Plaintiff for taking time to visit his family in Italy, while Stout, an American, would visit her family in Arizona without criticism.  Id. ¶ 22.

The FEC rated Plaintiff's performance as worse than his American and non-Jewish colleagues, despite his consistent performance and accomplishments.  Id. ¶ 23.  Kunz, Stout, Plein, and Holmes sharply criticized his work and routinely removed his contributions from department projects and tasks.  Id. ¶ 24.  In or around February and March 2021, Plaintiff was a member of the FEC with access to faculty files, annual reports, and records. Id. ¶ 25.  He noticed a difference in his colleagues' evaluations and assessments for promotions as compared to his own.  Id.

On November 2, 2020, Stout told Plaintiff that the FEC "wanted to make [him] hate being at WVU so much that [he] would want to leave by [him]self."  Id. ¶ 26.  WVU gave smaller salary increases to Plaintiff than it did to similarly situated American-born colleagues.  Id. ¶ 27.  WVU removed him from departmental communications and newsletters, giving the impression to readers that he no longer worked at WVU.  Id. ¶ 28.

### MEMORANDUM OPINION AND ORDER
### ADDRESSING MOTION TO STRIKE AND PARTIAL MOTION TO DISMISS

WVU also limited Plaintiff's ability to use paternity leave or modify his duties to allow more time with his newborn children. Id. ¶ 29. His American colleagues, however, were permitted to take parental leave. Id. Plaintiff was not informed of his ability to, or was not allowed to, modify his work schedule to grieve two miscarriages, despite the existence of a policy allowing leave for "significant personal circumstances." Id. ¶ 30. American colleagues, however, were permitted to take advantage of the policy. Id.

In or about 2019, WVU's Energy Institute sent Plaintiff an email identifying a grant opportunity opened by the United States Energy Association ("USEA"). Id. ¶ 31. The grant would initially provide $450,000 in funding from the United States Department of Energy. Id. Holmes advised Plaintiff to put together a proposal for it because it was a "perfect" opportunity that fit Plaintiff's "expertise and research." Id. ¶ 32. Plaintiff became the WVU principal investigator on the grant. Id. ¶ 33. Holmes told Plaintiff to speak with Taylor, the Assistant Director of the Energy Institute and overseer of WVU's grant approval process. Id.

Taylor did not have his Ph.D. and was in an administrative, as opposed to academic, position. Id. ¶ 34. Taylor advised Plaintiff that the University of Wyoming ("UW") was a partner in

MEMORANDUM OPINION AND ORDER
ADDRESSING MOTION TO STRIKE AND PARTIAL MOTION TO DISMISS

the grant and, strategically, it would be best if UW, not WVU, took the lead on the project.  Id.  Taylor told Plaintiff to speak to Tara Righetti ("Righetti"), a UW professor, to assist with the grant proposal.  Id. ¶ 35.  Righetti invited Kris Koski ("Koski"), another UW employee, to join the project.  Id.  Taylor invited Richardson, a professor at the WVU College of Law, to assist with the grant proposal.  Id. ¶ 36.

Plaintiff, along with Taylor, Richardson, Righetti, and Koski, submitted the grant application.  Id. ¶ 37.  In or around January 2020, UW received confirmation that USEA approved the application but requested several changes to the proposal.  Id. When UW told Taylor that USEA had approved the application, Taylor did not convey the message to Plaintiff until one or two weeks after others at WVU learned of the approval.  Id. ¶ 38.  WVU's team began to work on the project without Plaintiff, and the team excluded him from key communications and meetings even though he was the principal investigator.  Id. ¶ 39.  Plaintiff alleges that WVU disclosed confidential employee information to undercut his role in the project while his tenure and promotion process was ongoing.  Id. ¶ 62.

During the period when Plaintiff was excluded, Taylor, Richardson, and Righetti exchanged emails declaring that Plaintiff was "missing in action" and unresponsive.  Id. ¶ 40.  Richardson

### MEMORANDUM OPINION AND ORDER
### ADDRESSING MOTION TO STRIKE AND PARTIAL MOTION TO DISMISS

called Plaintiff a "total jackass" in an email. Id. They suggested that Plaintiff was lazy, that his work product was a "mess" and "crap," and that he was only participating in the project for the money. Id. They also suggested that members of the project give Plaintiff "some rope so he will hang himself." Id.

When the grant was approved, Taylor told Plaintiff that the funding should go to Richardson instead of Plaintiff. Id. ¶ 41. Taylor pressured Plaintiff to accept this change by yelling at him over the telephone. Id. Plaintiff told Taylor that neither Taylor nor Richardson had the authority to shift the federally sourced funding. Id.

In or around January 2020, Taylor's assistant advised Plaintiff that Stewart and Taylor had shifted the funding to Richardson. Id. ¶ 42. At that time, Taylor and Stewart had not received permission from USEA to shift the funding. Id. ¶ 73. Plaintiff then complained to Taylor, and Taylor submitted a "correction" that restored the funding to Plaintiff but removed Plaintiff as WVU's principal investigator. Id. ¶ 42. Taylor, through Stewart, "demoted" Plaintiff to the role of investigator and "promoted" himself to the role of de facto principal investigator. Id. ¶¶ 42, 53. WVU staff members held out to USEA that they made these changes after securing permission. Id. ¶ 72.

### MEMORANDUM OPINION AND ORDER
### ADDRESSING MOTION TO STRIKE AND PARTIAL MOTION TO DISMISS

Stewart claimed to Plaintiff that the WVU team believed it had been a mistake to designate Plaintiff as the WVU principal investigator. Id. ¶ 43. Stewart explained to Plaintiff that it was necessary for Taylor to be principal investigator because the USEA project involved multiple departments at WVU. Id. The "true practice," however, is for academics with substantive knowledge to be named as principal investigator, and Taylor had no relevant experience in any of the fields. Id. ¶ 44. Taylor would not acquire his Ph.D. until April 7, 2022. Id. Taylor is not Jewish or Italian. Id. ¶ 45.

Plaintiff later learned that the USEA grant was the only project at WVU with Taylor listed as the principal investigator or WVU project director. Id. ¶ 46. Another professor confirmed to Plaintiff that WVU usually only provided Taylor with limited clerical work and management on research projects, and never the role of principal investigator. Id. For the next four months, the WVU team withheld from Plaintiff information relevant to the completion of the project, excluded him from meetings with USEA, and excluded him from communications concerning the handling of the project. Id. ¶ 47.

On or about April 23, 2020, Richardson called Holmes to inform Holmes of Plaintiff's removal from the project. Id. ¶ 49. Holmes told Richardson that she had expected Plaintiff to fail and called

MEMORANDUM OPINION AND ORDER
ADDRESSING MOTION TO STRIKE AND PARTIAL MOTION TO DISMISS

him a "problem child in the department." Id. Righetti told the WVU team that they would need to do "damage control" regarding Plaintiff's release. Id. ¶ 48. Taylor promised to make "high-level" calls to WVU officials. Id.

On or about April 24, 2020, Righetti sent Plaintiff a letter, signed by her but substantially written by Richardson, advising that the WVU team was removing Plaintiff from the USEA project entirely. Id. ¶ 50. In the correspondence, the WVU team criticized Plaintiff's drafts but did not reference his American coworkers' drafts. Id. ¶ 51. The UW and WVU teams did not criticize Richardson's drafts even though Richardson admitted that he plagiarized large portions of his drafts from another source because he "could not summarize it better" than the original author. Id. Righetti had previously communicated to Plaintiff that his initial work was only meant to "set expectations," and that drafts were "only drafts." Id. ¶ 52. In April 2020, UW and WVU officially named Taylor the WVU principal investigator, formalizing what had been de facto true since January. Id. ¶ 53.

Throughout January and April 2020, there is no indication that WVU sought permission or authorization from USEA or the Department of Energy to change the project's budget allocations and personnel, which is expected and required for research projects with federally sourced funds. Id. ¶ 54. Plaintiff lost all the

FARAH V. WVU                                                    1:22-CV-153

### MEMORANDUM OPINION AND ORDER
### ADDRESSING MOTION TO STRIKE AND PARTIAL MOTION TO DISMISS

federal funding he was set to receive for his department; it went to Richardson and the WVU College of Law.  Id. ¶ 55.  He also lost additional renumeration, which went to Taylor.  Id.

On February 1, 2023, the FEC denied Plaintiff's promotion to full professor, stating that he needed to meet the standards of "extraordinary contributions" in three areas: teaching, research, and service.  Id. ¶ 56.  The "normal" university standard, however, is to show "significant contributions" in two areas and "reasonable contribution" in one area.  Id.  Plein was promoted to full professor with 7-10 publications in 13 years, but Plaintiff was denied a promotion to full professor with 15-18 publications in 3 years.  Id.  The FEC also received 7 external reviewer letters from R-1 universities, all unequivocally recommending Plaintiff's promotion to full professor, in comparison to Plein's 4 letters or Stout's 5 letters, some of which are very negative.  Id.

Based on these facts, Plaintiff asserts that he has suffered damages, and he brings the following causes of action:

(1)   Discrimination Based on National Origin/Race - Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e-2 et seq.) (against WVU);

(2)   Discrimination Based on Religion – Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e-2 et seq.) (against WVU);

(3)   False Claims Act Retaliation (31 U.S.C. § 3730(h)) (against Taylor, Stewart,

Richardson,      Holmes,      Kunz,      Plein);

(4)   Race/National Origin Discrimination – Section
      1981 of the Civil Rights Act of 1866 (42 U.S.C.
      § 1981 <u>et seq.</u> (against Taylor, Stewart,
      Richardson, Holmes, Plein, Kunz); and

(5)   Religious Discrimination – Section 1981 of the
      Civil Rights Act of 1866 (42 U.S.C. § 1981 <u>et
      seq.</u>) (against Taylor, Stewart, Richardson,
      Holmes, Plein, Kunz).

### III. <u>STANDARDS OF REVIEW</u>

### Rule 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to move for dismissal upon the ground that a complaint does not "state a claim upon which relief can be granted."  In ruling on a 12(b)(6) motion to dismiss, a court "must accept as true all of the factual allegations contained in the complaint." <u>Anderson v. Sara Lee Corp.</u>, 508 F.3d 181, 188 (4th Cir. 2007) (quoting <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007)).  A court is "not bound to accept as true a legal conclusion couched as a factual allegation." <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986).

A court should dismiss a complaint if it does not contain "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). Plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v.</u>

### MEMORANDUM OPINION AND ORDER
### ADDRESSING MOTION TO STRIKE AND PARTIAL MOTION TO DISMISS

Iqbal, 556 U.S. 662, 678 (2009).  A motion to dismiss "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."  Republican Party of N.C. v. Martin, 980 F.2d 942, 952 (4th Cir. 1992).  Dismissal is appropriate only if "it appears to be a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proven in support of its claim."  Johnson v. Mueller, 415 F.2d 354, 355 (4th Cir. 1969).

### Rule 12(f)

Rule 12(f) of the Federal Rules of Civil Procedure provides a district court with the authority to strike "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  A motion to strike, however, is "generally viewed with disfavor because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic."  Waste Mgmt. Holdings, Inc. v. Gilmore, 252 F.3d 316, 347 (4th Cir. 2001) (citation and quotation marks omitted).  Material should be stricken when it "has no bearing on the subject matter of the litigation" and "its inclusion will prejudice the defendants."  Jackson v. United States, No. 3:14-CV-15086, 2015 WL 5174238, at *1 (S.D.W. Va. Sept. 2, 2015).

## MEMORANDUM OPINION AND ORDER
### ADDRESSING MOTION TO STRIKE AND PARTIAL MOTION TO DISMISS

### IV.  DISCUSSION

Pursuant to Rules 12(f) and 12(b)(6) of the Federal Rules of Civil Procedure, Defendants move to strike certain allegations and partially dismiss the Amended Complaint.  For the reasons below, the motion to strike is granted in part and denied in part, and the partial motion to dismiss is granted in part and denied in part.

**A.   Count Three - False Claims Act**

The False Claims Act ("FSA") "is designed to discourage contractor fraud against the federal government." Glynn v. EDO Corp., 710 F.3d 209, 213 (4th Cir. 2013).  It imposes civil liability on any person who "'knowingly presents, or causes to be presented, [to the United States government] a false or fraudulent claim for payment or approval' or 'knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government.'" United States ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 376 (4th Cir. 2008) (citing 31 U.S.C. § 3729(a)).  The FCA also includes a whistleblower provision, which creates a cause of action for

> [a]ny employee, contractor, or agent . . . discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful

MEMORANDUM OPINION AND ORDER
ADDRESSING MOTION TO STRIKE AND PARTIAL MOTION TO DISMISS

>                acts done by the employee, contractor, or
>                agent . . . in furtherance of an action under
>                this section or other efforts to stop 1 or
>                more violations of this subchapter.

31 U.S.C. § 3730(h)(1).  It is under this whistleblower provision

that Plaintiff asserts a claim against the individual defendants.

Defendants move to dismiss Count Three for a number of reasons,

initially arguing that any request for compensatory damages sought

by Plaintiff against them in their official capacities must be

dismissed because they are immune under the Eleventh Amendment to

the United States Constitution.

Upon review of the record, the Court finds that Count Three

is asserted against the individual defendants in their official

capacities.  In Paragraph 72, Plaintiff asserts that "WVU staff

and officials acting in their official capacity mishandled federal

funds . . . ."  Further, in his Response, he writes, "Plaintiff

is suing the Individuals for violation of FCA's retaliation

provision in their official capacities."  ECF No. 32 at 18.  He

adds, "Indeed, all the Individuals are employees of WVU, and the

alleged retaliation occurred within the scope of their

employment."  Id.

The Eleventh Amendment provides, in pertinent part, "The

Judicial power of the United States shall not be construed to

extend to any suit in law or equity, commenced or prosecuted

15

MEMORANDUM OPINION AND ORDER
ADDRESSING MOTION TO STRIKE AND PARTIAL MOTION TO DISMISS

against one of the United States by Citizens of another State[.]"
"[A]bsent waiver by the State or valid congressional override, the
Eleventh Amendment bars a damages action against a State in federal
Court." Kentucky v. Graham, 473 U.S. 159, 169 (1985). "This
immunity applies to . . . state employees acting in their official
capacity." Harter v. Vernon, 101 F.3d 334, 337 (4th Cir. 1996).
"[A] suit against a state official in his or her official capacity
is not a suit against the official but rather is a suit against
the official's office. . . . As such, it is no different from a
suit against the State itself." Will v. Mich. Dep't of State
Police, 491 U.S. 58, 71 (1989) (citations omitted).

"[A] general authorization for suit in federal court is not
the kind of unequivocal statutory language sufficient to abrogate
the Eleventh Amendment." Seminole Tribe of Fla. v. Fla., 517 U.S.
44, 56 (1996) (citation omitted). Rather, "Congress may abrogate
the States' constitutionally secured immunity from suit in federal
court only by making its intention unmistakably clear in the
language of the statute." Id. (citation omitted). As acknowledged
by the Southern District of New York, "nothing in the amended text
of section 3730(h) or any other statutory text evidences an
unequivocal intent to waive sovereign immunity under the FCA."
Aryai v. Forfeiture Support Assocs., 25 F. Supp. 3d 376, 384
(S.D.N.Y. 2012); see also United States v. Tex. Tech Univ., 171

FARAH V. WVU                                              1:22-CV-153

### MEMORANDUM OPINION AND ORDER
### ADDRESSING MOTION TO STRIKE AND PARTIAL MOTION TO DISMISS

F.3d 279, 294-95 (5th Cir. 1999) (barring Section 3730(h) retaliation claim against Texas Tech University based on state sovereign immunity).

The individual defendants are state employees, and Plaintiff is suing them in their official capacities. Because there is no clear abrogation of the Eleventh Amendment, they are entitled to immunity. The Court, therefore, **GRANTS** the motion to dismiss in this respect and **DISMISSES** Count Three in its entirety.

**B.   Counts Four and Five - 42 U.S.C. § 1981**

Under 42 U.S.C. § 1981, Plaintiff asserts a claim of race/national origin discrimination in Count Four and religious discrimination in Count Five. Defendants move to dismiss both counts because Plaintiff has not alleged the existence of a contract. They also move to dismiss Count Four because Section 1981 does not provide protection for discrimination based on national origin and because Plaintiff fails to state a claim of race discrimination. Finally, they move to dismiss Count Five because Section 1981 does not provide protection for discrimination based on religion.

Under 42 U.S.C. § 1981, all persons are protected "from racial discrimination in making and enforcing contracts." Woods v. City of Greensboro, 855 F.3d 639, 645 (4th Cir. 2017) (citing 42 U.S.C. § 1981). The statute ensures that "[a]ll persons . . . shall have

## MEMORANDUM OPINION AND ORDER
### ADDRESSING MOTION TO STRIKE AND PARTIAL MOTION TO DISMISS

the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981. "To state a Section 1981 claim, a plaintiff must allege 'both that the defendant intended to discriminate on the basis of race, and that the discrimination interfered with a contractual interest.'" Roy v. Int'l Ass'n of Sheet Metal, Air, Rail, & Transp. Workers Loc. Union No. 33, No. 2:19-CV-00698, 2020 WL 5665794, at *3 (S.D.W. Va. Sept. 23, 2020) (quoting Denny v. Elizabeth Arden Salons, Inc., 456 F.3d 427, 434 (4th Cir. 2006)).

"Where a fellow employee intentionally interferes with the right of a coworker to make or enforce a contract with the employer and that interference is based on illegal discrimination, the employee's conduct is actionable under § 1981." Collin v. Rector & Bd. of Visitors of Univ. of Va., 873 F. Supp. 1008, 1015 (W.D. Va. 1995) (citing Kolb v. Ohio Dep't of Mental Retardation & Development Disabilities, 721 F. Supp. 885, 891-92 (N.D. Ohio 1989), and Tillman v. Wheaton-Haven, 517 F.2d 1141, 1146 (4th Cir. 1975)).

Here, first, the Court notes that Plaintiff does not specify whether Counts Four and Five are brought against the individual defendants in their individual or official capacities. The Court finds that the individual defendants are entitled to immunity to the extent that they are sued in their official capacities. See

FARAH V. WVU                                    1:22-CV-153

MEMORANDUM OPINION AND ORDER
ADDRESSING MOTION TO STRIKE AND PARTIAL MOTION TO DISMISS

Thompson v. Admin. Off. of the Supreme Ct. of Appeals of W. Va., No. 2:02-0353, 2004 WL 3266044, at *7 (S.D.W. Va. Dec. 6, 2004), aff'd, Thompson v. W. Va. Supreme Ct. of Appeals, 122 F. App'x 643, at *1 (4th Cir. Mar. 4, 2005) (unpublished) (affirming decision granting Eleventh Amendment immunity with respect to Section 1981 claim).[2]

Finding no abrogation of the Eleventh Amendment with respect to Section 1981, the motion to dismiss is **GRANTED** in this respect, and Counts Four and Five are **DISMISSED** against the individual defendants (Taylor, Stewart, Richardson, Plein, Kunz, and Holmes) to the extent they are sued in their official capacities. Counts Four and Five are additionally dismissed for the reasons discussed herein.

### 1. Count Five fails because 42 U.S.C. § 1981 does not afford protection for discrimination based on religion.

Dismissal of Count Five is appropriate because Section 1981 does not provide protection against discrimination based on religion. See Lubavitch-Chabad of Ill., Inc. v. Nw. Univ., 772 F.3d 443, 447 (7th Cir. 2014) (affirming dismissal of Section 1981

---

[2] "Many courts have held that there is no abrogation of the Eleventh Amendment with respect to Section 1981." Carmen v. San Francisco Unified Sch. Dist., 982 F. Supp. 1396, 1403 (N.D. Cal. 1997) (citing Freeman v. Mich. Dep't of State, 808 F.2d 1174 (6th Cir. 1987); Rucker v. Higher Educ. Aids Bd., 669 F.2d 1179 (7th Cir. 1982); Sessions v. Rusk State Hosp., 648 F.2d 1066 (5th Cir. 1981)).

19

**MEMORANDUM OPINION AND ORDER**
**ADDRESSING MOTION TO STRIKE AND PARTIAL MOTION TO DISMISS**

claim based on Jewish religion as opposed to discrimination against
ethnic Jews).  Plaintiff has specifically pled Count Five as one
of "religious discrimination" based on his being Jewish.  Am.
Compl., ECF No. 10, at ¶¶ 84-87.  Accordingly, Count Five is
**DISMISSED**.

> **2.  To the extent that Plaintiff asserts discrimination
> based on his national origin, Count Four fails because
> 42 U.S.C. § 1981 does not afford protection for
> discrimination based on national origin.**

Dismissal of Count Four is appropriate to the extent that
Plaintiff alleges discrimination based on his Italian national
origin.   While   Section   1981   provides   protection   from
discrimination based on race, it does not provide protection from
discrimination based on national origin.  See Nnadozie v. Genesis
Healthcare Corp., 730 F. App'x 151, 157 (4th Cir. 2018) (affirming
dismissal of 1981 claim based purely on national origin).  The
concept of "race" as it relates to Section 1981 is "much broader
than our modern understanding of the term" and extends to "ancestry
or ethnic characteristics," but it does not afford protection from
discrimination based on national origin.  Id. at 156-57.

In Count Four, Plaintiff's claim of discrimination is, at
least in part, based on his Italian national origin.  See Am.
Compl., ECF No. 10, at ¶¶ 79-82 (stating that Plaintiff "is of
Italian   national   origin"   and   alleging   that   the   individual

**MEMORANDUM OPINION AND ORDER**
**ADDRESSING MOTION TO STRIKE AND PARTIAL MOTION TO DISMISS**

defendants "took . . . actions against [Plaintiff] based, in whole or in part, on [his] national origin"). Plaintiff's status as an Italian is different from his race or ethnicity. To the extent that he alleges discrimination under Section 1981 for being Italian, his claim is **DISMISSED**.

> **3. To the extent that Count Four is a claim of racial discrimination as an ethnic Jew, he has failed to state a claim under Section 1981.**

The only conceivable remaining basis for Count Four is Plaintiff's status, if any, as an ethnic Jew. To the extent that Count Four is based his status as an ethnic Jew, it also fails.

The Fourth Circuit recently described the elements of a prima facie case of race discrimination under Section 1981:

> When addressing race-discrimination claims under Section 1981, courts apply the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). First, the plaintiff must establish a prima facie case for race discrimination by showing "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010) (citation omitted), aff'd, 566 U.S. 30, 132 S.Ct. 1327, 182 L.Ed.2d 296 (2012).

Giles v. Nat'l R.R. Passenger Corp., 59 F.4th 696, 703-04 (4th Cir. 2023). In a Section 1981 action, "a plaintiff must initially plead and ultimately prove that, but for race, it would not have

**MEMORANDUM OPINION AND ORDER**
**ADDRESSING MOTION TO STRIKE AND PARTIAL MOTION TO DISMISS**

suffered the loss of a legally protected right." <u>Comcast Corp. v.</u>
<u>Nat'l Assoc. of African American-Owned Media</u>, 140 S. Ct. 1009,
1019 (2020).

Here, after a thorough review of the Amended Complaint, the
Court finds that it does not sufficiently allege that but for his
status as an ethnic Jew, Plaintiff would not have suffered the
loss of a legally protected right.  He has not asserted any
discrimination based on a "specific ethnic characteristic that
might reasonably fall under a broad understanding of race."
<u>Nnadozie</u>, 730 F. App'x at 156 (internal quotation marks omitted).
For these reasons, Count Four is **DISMISSED** in its entirety.

**C.   Counts One and Two – Title VII of the Civil Rights Act**

Counts One and Two of the Amended Complaint assert claims
against WVU under Title VII of the Civil Rights Act of 1964 ("Title
VII").  Defendants argue that portions of the Title VII claims
must be dismissed and stricken from the Amended Complaint as
waived, time barred, or imperfected.[3]

---

[3] In Defendants' Reply, they ask the Court to strike additional
factual allegations (e.g., Barnes being invited to social events
when Plaintiff was not), but the Court will address only those
included in the motion.

FARAH V. WVU                                        1:22-CV-153

### MEMORANDUM OPINION AND ORDER
### ADDRESSING MOTION TO STRIKE AND PARTIAL MOTION TO DISMISS

1.   **WVU's denial of Plaintiff's application for tenure in 2017 is stricken because it has no bearing on the subject matter and will prejudice Defendants.**

The Amended Complaint alleges that WVU denied Plaintiff's application for tenure in 2017. Am. Compl., ECF No. 10, at ¶ 16. Plaintiff further alleges that he filed a grievance in response to his denial of tenure and later resolved the grievance with WVU via settlement. Id. ¶ 18. WVU argues that, to the extent Plaintiff relies on these allegations to support his Title VII claims, they are expressly waived by the terms of the Settlement Agreement. See Motion, Exh. A, ECF No. 30, at ¶ 5 (sealed); see also Campbell v. Geren, 353 F. App'x 879, 882 (4th Cir. 2009) (affirming dismissal of claims contemplated by prior settlement agreement). Plaintiff states in his response that this information was merely included as background and is not an adverse action for which he seeks relief.

The Court agrees with Defendants that this allegation is expressly waived by the Settlement Agreement. Recognizing that Plaintiff does not intend to offer the 2017 tenure denial as evidence, it should additionally be stricken from the Amended Complaint because it has no bearing on the subject matter and will prejudice Defendants. The Court hereby **STRIKES** these allegations from the Amended Complaint. Plaintiff may not rely on the denial

**FARAH V. WVU**                                                    **1:22-CV-153**

### MEMORANDUM OPINION AND ORDER
### ADDRESSING MOTION TO STRIKE AND PARTIAL MOTION TO DISMISS

of his promotion to tenure in 2017 to support his claims in Counts One and Two.

> **2.  Plaintiff's allegations predating November 20, 2020, are time-barred.**

Title VII "precludes recovery for discrete acts of discrimination or retaliation that occur outside the [300-day] statutory time period" for filing charges of discrimination with the EEOC. National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 105 (2002). Plaintiff filed his initial charge with the EEOC on September 16, 2021. Am. Compl., ECF No. 10, at ¶ 7. Defendants argue that any events that allegedly occurred prior to November 20, 2020, are time-barred. Plaintiff has argued that he is entitled to equitable tolling or equitable estoppel with respect to some of the allegations.

"The circumstances under which equitable tolling has been permitted are . . . quite narrow." Chao v. Va. Dep't of Transp., 291 F.3d 276, 283 (4th Cir. 2002). "Equitable tolling applies where the defendant has wrongfully deceived or misled the plaintiff in order to conceal the existence of a cause of action." English v. Pabst Brewing Co., 828 F.2d 1047, 1049 (4th Cir. 1987). "Equitable estoppel applies where, despite the plaintiff's knowledge of the facts, the defendant engages in intentional

FARAH V. WVU                                                    1:22-CV-153

### MEMORANDUM OPINION AND ORDER
### ADDRESSING MOTION TO STRIKE AND PARTIAL MOTION TO DISMISS

misconduct to cause the plaintiff to miss the filing deadline."
Id.

The allegations that Defendants argue are time-barred include Plaintiff's "demotion" from principal investigator for WVU and removal from the USEA grant project between January and April 2020; the alleged statement that the FEC "wanted to make [Plaintiff] hate being at WVU so much that [he] would want to leave" made on November 2, 2020; WVU's disclosure of confidential employment information to undercut Plaintiff's role in the grant project; and WVU's alleged failure to provide parental leave to Plaintiff in 2018.  Plaintiff states that he is not relying on the FEC comment or the parental leave issue to support his claims in Counts One and Two.

Plaintiff has not made a sufficient showing to warrant the application of equitable tolling or equitable estoppel.  Nothing in the record indicates that WVU wrongfully deceived or misled him in order to conceal the existence of a cause of action.  Nothing indicates that WVU engaged in intentional misconduct to cause him to miss a filing deadline.  Because equitable tolling and equitable estoppel do not apply, the Court agrees with Defendants that the listed allegations are time-barred.  Accordingly, they are **STRICKEN** from the Amended Complaint because they have no bearing on the subject matter and will prejudice Defendants.  Plaintiffs

MEMORANDUM OPINION AND ORDER
ADDRESSING MOTION TO STRIKE AND PARTIAL MOTION TO DISMISS

may not rely upon these allegations to support his claims in Counts One and Two.

### 3. The Court denies the motion to strike Plaintiff's allegation that the FEC denied his promotion to full professor in 2023.

Plaintiff alleges that the FEC denied his promotion to full professor in February 2023.  Am. Compl., ECF No. 10, at ¶ 56. Defendants originally argued that this allegation was premature because no decision had been made regarding Plaintiff's application for promotion.  Now, Defendants argue that the issue is moot because Plaintiff has, in fact, been promoted to full professor.  Even if Plaintiff had been denied this promotion, they argue, he cannot proceed on this claim because he has not exhausted his administrative remedies.

At this stage of the litigation, the Court disagrees with Defendants that the issue is moot.  Plaintiff could have been harmed by WVU's failure to promote him in February 2023 (assuming, at this stage, that the facts in the Amended Complaint are true) even if he was ultimately awarded the promotion later.  Further, the Court disagrees with Defendants' position that Plaintiff cannot proceed with this allegation due to his failure to exhaust.

Prior to filing a Title VII action, a plaintiff must first exhaust any available administrative remedies.  Lewis v. City of Chicago, 560 U.S. 205, 210 (2010); 42 U.S.C. § 2000e-5(e)(1).  "The

### MEMORANDUM OPINION AND ORDER
### ADDRESSING MOTION TO STRIKE AND PARTIAL MOTION TO DISMISS

exhaustion requirement ensures that the employer is put on notice of the alleged violations so that the matter can be resolved out of court if possible." Miles v. Dell, Inc., 429 F.3d 480, 491 (4th Cir. 2005). Administrative exhaustion advances the complementary goals of "protecting agency authority in the administrative process and promoting efficiency in the resolution of claims." Stewart v. Iancu, 912 F.3d 693, 699 (4th Cir. 2019) (citations, internal quotation marks, and alterations omitted). "[W]hen the claims in [the] court complaint are broader than 'the allegation of a discrete act or acts in [the] administrative charge,' they are procedurally barred." Parker v. Reema Consulting Servs., Inc., 915 F.3d 297, 306 (4th Cir. 2019) (citing Chacko v. Patuxent Inst., 429 F.3d 505, 508–10 (4th Cir. 2005)).

That said, an EEOC charge "does not strictly limit a Title VII suit which may follow; rather, the scope of the civil action is confined only by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination." Miles, 429 F.3d at 491 (citation omitted). Federal courts may hear claims that were not presented to the EEOC so long as they are "reasonably related to [the] EEOC charge and can be expected to follow from a reasonable administrative investigation[.]" Sydnor v. Fairfax Cnty., 681 F.3d 591, 594 (4th Cir. 2012) (citation omitted).

**FARAH V. WVU**                                                    **1:22-CV-153**

MEMORANDUM OPINION AND ORDER
ADDRESSING MOTION TO STRIKE AND PARTIAL MOTION TO DISMISS

Here, the Court finds that an allegation of a promotion denial in 2023 is reasonably related to Plaintiff's EEOC charge.  It would have been expected to follow from a reasonable administrative investigation into Plaintiff's allegations.  Accordingly, the Court does not believe it appropriate to strike the allegation at this time, and Defendants' motion to strike is **DENIED** in this respect.

**V.    CONCLUSION**

For the reasons discussed, Defendants' motion to strike is **GRANTED IN PART** and **DENIED IN PART** [ECF No. 25].  Defendants' partial motion to dismiss is **GRANTED IN PART** and **DENIED IN PART** [ECF No. 25].

It is so **ORDERED**.

The Clerk is **DIRECTED** to transmit copies of this Memorandum Opinion and Order to counsel of record.

DATED: March 26, 2024

THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA