IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG

| | |
|---|---|
| PAOLO FARAH,<br><br>**Plaintiff,**<br><br>v.<br><br>WEST VIRGINIA UNIVERISTY BOARD OF GOVERNORS, SAMUEL TAYLOR, CODY STEWART, JESSE RICHARDSON, MAJA HOLMES, KAREN KUNZ, CHRISTOPHER PLEIN, COREY COLYER, and LISA DEFRANK-COLE,<br><br>**Defendants.** | CIVIL ACTION NO.: 1:22-CV-153<br>(JUDGE KLEEH) |

**REPORT AND RECOMMENDATION, RECOMMENDING THAT DEFENDANT WEST VIRGINIA UNIVERSITY BOARD OF GOVERNOR'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 142] BE GRANTED AND MOTION FOR SANCTIONS [ECF NO. 138] BE DENIED AS MOOT**

This matter is before the undersigned United States Magistrate Judge pursuant to a Referral Order [ECF No. 80] entered by the Hon. Thomas S. Kleeh, Chief United States District Judge, on March 22, 2024. By the Referral Order, Chief Judge Kleeh directed that the undersigned enter written orders or reports and recommendations, as appropriate, and to handle other matters herein. Presently pending before the Court is a motion for summary judgment [ECF No. 142] and memorandum in support [ECF No. 143], thereof, filed by Defendant West Virginia University Board of Governors ("Defendant") on June 28, 2024. The Court also is in receipt of *pro se* Plaintiff's response in opposition [ECF No. 154] to the summary judgment motion, filed on July 25, 2024, as well as Defendant's reply [ECF No. 155] in support of its summary judgment motion, filed on July 26, 2024. Defendant also previously filed a motion for sanctions [ECF No. 138, 139].

1

The Court is in receipt of *pro se* Plaintiff's response in opposition. [ECF No. 151] and Defendant's reply. [ECF No. 152].

Based upon a thorough review of the motions, responses, replies; of the entire record herein; and of pertinent legal authority, the undersigned respectfully **RECOMMENDS** that Defendant's motion for summary judgment [ECF No. 142] be **GRANTED** and Defendant's motion for sanctions be **DENIED as moot** as set forth herein.

   I.   PLAINTIFF'S FACTUAL BACKGROUND AND ALLEGATIONS

       A.  Factual Background

Plaintiff is an individual of Italian national origin and Jewish ethnicity employed as a West Virginia University ("WVU") professor. Defendant is the Board of Governors ("BOG") of WVU. The individual named Defendants are all former or current WVU employees.

Plaintiff has been employed by WVU as a faculty member in the Department of Public Administration since August 2014. He was hired under a nine-month appointment. Plaintiff began as a Visiting Assistant Professor at a notably higher base salary than traditionally granted to new faculty. Plaintiff became a tenure-track Assistant Professor in May 2015, with the expectation of a tenure decision to be made in 2019 or 2020. Plaintiff consistently received positive annual evaluation remarks throughout his employment, receiving promotions in May 2020 and May 2023.

In February 2017, Defendant Holmes denied Plaintiff's tenure application. Plaintiff filed a grievance in response to the denial, but ultimately resolved the grievance via settlement. Plaintiff was promoted to Associate Professor and awarded tenure in May 2020. Then, Plaintiff was promoted to Full Professor in May 2023.

Due to several personal events that occurred from May 2018 to August 2021, Plaintiff requested a single modification for his duties in the fall 2022 and spring 2023 semesters in March 2021.  The events included "(1) the birth of his child in May 2018; (2) a miscarriage his wife

suffered in February 2020; (3) a second miscarriage his wife suffered in August 2020; (4) his wife's diagnosis as a high-risk pregnancy; and (5) the expected birth of his child in August 2021." [ECF No. 143, at 7]. The request was denied for failing to comply with BOG Rule 4.5 of the BOG Faculty Rules. Specifically, as Plaintiff served under a nine-month contract, he failed to request a modification of duties within one year of the birth of his child in 2018 and requested a modification for events that spanned over more than one semester. Plaintiff submitted a revised request in June 2021 that was limited to the expected birth of his child in 2021, which was granted for the 2022 spring semester. Plaintiff additionally applied for sabbatical leave for the 2021-2022 academic year, though he chose to defer his sabbatical to the 2022-2023 academic year.

Additionally, WVU's Energy Institute notified Plaintiff about a grant opportunity working for the United States Energy Association ("USEA") in 2019. Plaintiff became involved with the grant proposal, along with Defendant Taylor and Defendant Richardson. The grant was approved in January 2020, but Plaintiff was removed from the project entirely in April 2020.

Due to the above actions, Plaintiff alleged that he was the victim of discrimination from his colleagues and superiors at WVU. The allegations ranged from being as mundane as not being invited to non-professional social events to as serious as discriminatory remarks based on his nationality and religion. He specifically claimed that "(1) WVU and the Faculty Evaluation Committee ("FEC")[1] critiqued his performance more harshly in his annual evaluations and assessments for promotions; (2) 'WVU awarded smaller salary increases to [Plaintiff]'; (3) WVU failed to inform [Plaintiff] of his ability to take parental leave or apply for a modification of duties…; and (4) WVU denied his application for promotion to Full Professor in February 2023, different from the treatment of his American and non-Jewish colleagues." [ECF No. 143, at 2].

---

[1] Based on the undersigned's review of the record, it appears that "FEC" stands for Faculty Evaluation Committee.

3

Other allegations include "colleagues [who] did not invite him to social events, mocked his accent, criticized him for taking time off, and removed him from Department communication and newsletters." Id.

### B. Procedural Background

Plaintiff filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") with the above allegations on September 16, 2021. The charge was amended on February 14, 2022. On September 12, 2022, the EEOC issued a Notice of the Right to Sue. On December 9, 2022, Plaintiff filed the instant action. In Plaintiff's initial Complaint, only Defendant West Virginia University Board of Governors was named. [ECF No. 1]. However, eight individual WVU employees were named in his Amended Complaint. [ECF No. 10]. Two individual Defendants were voluntarily dismissed [ECF No. 33], while the remaining individual Defendants were dismissed pursuant to the Court's Memorandum Opinion and Order of March 26, 2024. [ECF No. 82]. Of the five Counts of the Amended Complaint, only Counts I and II remain at issue. Id.

Plaintiff was represented by counsel from December 2022 through February 7, 2024. [ECF Nos. 49, 51, 57-58, 69]. Plaintiff has proceeded *pro se* since then.

On June 21, 2024, Defendant filed a motion for sanctions seeking dismissal of this action with prejudice or, alternatively, an order prohibiting Plaintiff from introducing evidence of damages due to Plaintiff's failure to provide full and complete discovery responses, in violation of this Court's Order. [ECF Nos. 138, 139]. Plaintiff was directed to respond to the motion on or before July 12, 2024. [ECF No. 140]. On July 9, 2024, the parties submitted an agreed stipulation to extend the time for Plaintiff to respond to Defendant's motion for sanctions to July 15, 2024. [ECF No. 149]. The Court is in receipt of *pro se* Plaintiff's response in opposition [ECF No. 151] filed on July 19, 2024 and Defendant's reply [ECF No. 152] filed on July 22, 2024.

## II. LEGAL ISSUES AND ANALYSIS

Because Plaintiff is proceeding *pro se*, the Court must liberally construe his filings. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Loe v. Armistead, 582 F.2d 1291, 1295 (4th Cir. 1978). However, court may not construct a plaintiff's legal arguments for him, nor should it "conjure up questions never squarely presented." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985).

Defendant here moves for summary judgment. As is well-established, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Moreover, "[a]lthough we view the evidence in the light most favorable to the nonmoving party, that party must produce evidence that goes beyond '[c]onclusory or speculative allegations' and relies on more than 'a mere scintilla of evidence' to withstand summary judgment." Hodgin v. UTC Fire & Sec. Americas Corp., 885 F.3d 243, 252 (4th Cir. 2018) (citations omitted). Additionally, the party filing a summary judgment motion must first demonstrate that there is no genuine issue of fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party sufficiently shows that there is no genuine factual issue such that there is only a legal issue for the Court to resolve, then the burden shifts to the non-moving party to a "make sufficient showing on an essential element of her case with respect to which she has the burden of proof." Id.

Under Title VII of the Civil Rights Act of 1964, an employer is prohibited from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion . . . or national origin." 42 U.S.C.A. § 2000e-2(a)(1). If no direct evidence is provided, "the elements of a prima facie case of discrimination under Title VII are: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated

5

employees outside the protected class." Coleman v. Maryland Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd sub nom. 566 U.S. 30 (2012). Once a prima facie case is proven, the burden shifts to the employer to provide a "legitimate, nondiscriminatory reason" for its action. Guessous v. Fairview Prop. Invs., LLC, 828 F.3d 208, 217 (4th Cir. 2016). If the burden is satisfied, the plaintiff must prove by a preponderance of the evidence that the employer's reason for the adverse action was a pretext for discrimination. Id.

### A. Plaintiff's allegations do not constitute adverse actions that affected any terms or conditions of his employment.

In the Fourth Circuit, an adverse employment action in discrimination cases is limited to acts that "constitute[] a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Hoyle v. Freightliner, LLC, 650 F.3d 321, 337 (4th Cir. 2011) (quoting Burlington Indus, Inc. v. Ellerth, 524 U.S. 742, 761 (1998)); see also Holland v. Wash. Homes, Inc., 487 F.3d 208, 2019 (4th Cir. 2007) ("An adverse employment action is a discriminatory act that adversely affects the terms, conditions, or benefits of the plaintiff's employment.") (internal citations and quotation marks omitted).

Plaintiff alleges that Defendant engaged in Title VII discrimination evidenced by an alleged disparity between his colleagues' annual evaluations and promotional evaluations compared to the Plaintiff's. Unfavorable performance allegations do not constitute an adverse employment action unless they are used "as a basis to detrimentally alter the terms or conditions of the recipient's employment." James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 377 (4th Cir. 2004), abrogated on other grounds by Muldrow v. City of St. Louis, Missouri, 144 S. Ct. 967 (2024); see also Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 652 (4th Cir. 2002) (plaintiff's "fully acceptable" rating was not an adverse employment action even though lower

6

than previous ratings); Von Gunten v. Maryland, 243 F.3d 858, 867-8 (4th Cir. 2001) (plaintiff's "unsatisfactory" rating was not considered an adverse action where plaintiff was still granted a pay raise), abrogated on other grounds by Burlington V. & Santa Fe Ry. Co v. White, 548 U.S. 53 (2006).

Analyzing Plaintiff's promotional history, the evaluations were not unfavorable but often quite complimentary, ranging from "excellent" at their peak and "satisfactory" at their lowest. [ECF No. 142-11,12 Ex. K]. As Defendant persuasively points out, nothing in the record suggests that the drops in assessments to "satisfactory" and "good" during the evaluation of 2021 had any impact Plaintiff's employment. Plaintiff received annual wage increases, was promoted to Associate Professor in 2020, and then promoted again to Full Professor in 2023. Defendant further provides that Plaintiff was promoted "despite not teaching any courses at WVU for four semesters during this three-year time period." [ECF No. 143, at 11].

While Plaintiff agrees with Defendant's representation that Plaintiff received "positive annual evaluation from FEC and the Department Chair throughout his employment," Plaintiff alleges Defendant omits an explanation as to why he was denied a promotion to Associate Professor in 2017. [ECF No. 154, at 2]. However, pursuant to this Court's Order, this allegation was stricken from the Amended Complaint. [ECF No. 82, at 23]. Therefore, Plaintiff's insistence on relying on this allegation to support his Title VII claims is futile.

Plaintiff further alleges that Defendant engaged in various "slights" that he deemed to be discriminatory. However, Plaintiff has failed to allege how these actions were important professionally or how his exclusion adversely affected his employment. Again, a plaintiff must show that actions were beyond irritation and must "actually adversely [a]ffect[] a term, condition, or benefit of [his] employment." Von Gunten, 243 F.3d at 869. Specifically, Plaintiff alleges that

his colleagues failed to invite him to social gatherings, mocked his accent, and criticized him for taking to time to visit his family in Italy. As Defendant persuasively argues, these instances are alleged discrete acts that support his disparate treatment claims rather than a claim of hostile work environment. See Lester v. Natsios, 290 F. Supp. 2d 11, 33 (D.D.C. 2003) ("Discrete acts constituting discrimination or retaliation claims . . . are different in kind from a hostile work environment claim.") Even if they were, Plaintiff has not alleged nor established that the actions were severe or persuasive enough to support a hostile work environment claim. See Perkins v. Int'l Paper Co., 936 F.3d 196, 207-8 (4th Cir. 2019) (holding that a plaintiff must show that "the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere" in a prima facie case of a hostile work environment claim).

The allegations are not, by themselves, actionable. Accordingly, the undersigned **RECOMMENDS** that the motion be **GRANTED**.

### B. Plaintiff was not treated differently from similarly situated, American-born, non-Jewish, colleagues with respect to the allegations including modification of duties, salary increases, or other alleged adverse employment actions.

Plaintiff alleged that he was treated differently from his coworkers with respect to modification of duties and salary increases while Defendant contends that there is nothing in the record to suggest this. When "plaintiffs have based their allegations completely upon a comparison to an employee from a non-protected class, . . . the validity of their prima facie case depends upon whether that comparator is indeed similarly situated." Haywood v. Locke, 387 F. App'x 355, 359 (4th Cir. 2010). Establishing a valid comparator requires a plaintiff "show[ing] that they are similar in all relevant respects to their comparator." Id. Relevant considerations may include "whether the employees (i) held the same job description, (ii) were subject to the same standards, (iii) were subordinate to the same supervisor, and (iv) had comparable experience, education, and other qualifications–provided the employer considered these latter factors in making the personal

decision." Spencer v. Va. State Univ., 919 F.3d 199, 207 (4th Cir. 2019), as amended (Mar. 26, 2019) (citations omitted).

Plaintiff alleges that WVU failed to inform him of his ability to take parental leave or modify his duties and denied his requests for such benefits in 2020 and 2021. Defendant contends that neither is true. As a nine-month contract employee, Plaintiff was not eligible for parental leave and could only apply for a modification of duties pursuant to the Faculty Handbook. This information is readily available online and distributed to every WVU faculty member at the beginning of the academic year. [ECF No. 142, Ex. D at ¶ 3]. Plaintiff, as a longtime employee of WVU, was advised of these policies regarding parental leave and duty modification.

Furthermore, denial of Plaintiff's request was appropriate. According to BOG Rule 4.5, requests for modifications must be made within one year of the qualifying event and the modifications may be provided for one semester. Plaintiff's initial request was based on an event outside the eligibility period, that being the birth of his son three years prior to the request. In addition, Plaintiff requested multiple requests for a modification of duties based on two events to span over two semesters. Defendant further contends that the Provost has the discretion to determine whether an event is qualifying and utilized that discretion to determine that Plaintiff's wife's two miscarriages were not qualifying events. However, once Plaintiff revised his request for a modification of duties, the Provost's Office granted it. [ECF No. 142, Ex. D at ¶ 6].

Perhaps most fatal to Plaintiff's claim, Plaintiff has not presented any facts that show similarly situated faculty of different national origin or religion received more favorable treatment than Plaintiff. When a plaintiff cannot "point to a single instance where a similarly situated nonminority, American-born employee was treated more favorably than him," summary judgment is appropriate. See Sado v. Leland Mem'l Hosp., 933 F. Supp. 490, 493 (D. Md. 1996).

Plaintiff further alleges that his salary increases were smaller than similarly situated American-born colleagues. This claim is oversimplistic. Defendant does not dispute that Plaintiff's "merit adjustments were not as significant as those awarded to other faculty members." [ECF No. 143, at 17]. What Plaintiff omits is that he was hired at a greater base salary than his peers, which resulted in a lower recommended percentage raise than other faculty members. Id., Ex. D ¶ 12. BOG Rule 4.4 governs how compensation adjustments can be distributed, such as promotions and market-based adjustments. [ECF No. 142, Ex. E, BOG Rule 4.4 at 3-5]. One such adjustment is by analyzing a professor's "compa-ratio," or a percentage comparison between the faculty member's salary to the market salary, for "merit/critical retention raises." [ECF No. 143, at 17]. Faculty members with a compa-ratio under 90% would be recommended to receive a greater percentage raise than a member above 90%. [ECF No. 142, Ex. D at 10-12]. Plaintiff's compar-ratio was at 84% and higher. Thus, it would be inaccurate to state that Plaintiff's salary increases were smaller than his similarly situated peers. Defendant explains that Plaintiff's base salary is significantly higher and places him in a different pay standard than the unspecified employees to whom he compares himself. Furthermore, while Plaintiff alleges in the Amended Complaint that "WVU awarded smaller salary increases to [Plaintiff] than it did to his similarly situated American Colleagues" [ECF No. 10, ¶ 28], Plaintiff does not specify which peers he is comparing himself to for that allegation. A plaintiff is required "to identify a specific comparator rather than making vague assertions that unspecified individuals were treated more favorably." Duheme v. Columbia CSA-HS Greater Columbia Healthcare Sys. LP, No. CA 3:11-2902, 2014 WL 468942, at *5 (D.S.C. Feb. 4, 2014) (citing Causey v. Balog, 162 F.3d 795, 801-2 (4th Cir. 1998)).

Additionally, Defendant points out that Plaintiff, in his response to the instant motion, for the first time alleges that he was passed over for promotions and leadership roles that impacted his

earning potential and outside employment opportunities. [ECF No. 154, at 4]. These allegations are not referenced in the Amended Complaint. A belated attempt to rewrite his complaint to avoid summary judgment is improper. See Barcus v. Austin, 2020 U.S. Dist. LEXIS 66965, at *10 (N.D.W. Va. Apr. 16, 2020) ("A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment.") (quoting Shanahan v. City of Chicago, 82 F.3d 776, 780 (7th Cir. 1996). Thus, the undersigned has not given any weight to this argument for sake of assessing the motion for summary judgment on the merits.

Plaintiff has thus failed to establish evidence that any decisions regarding Plaintiff's compensation were based on his national origin or religion. Accordingly, the undersigned **RECOMMENDS** that the motion should be **GRANTED**.

Further, Defendant filed a Motion for Sanctions [ECF No. 138] requesting this Court "dismiss this action, with prejudice, or alternatively, prohibit Plaintiff from introducing evidence of damages for failing to provide full and complete discovery responses in violation of this Court's Order." [ECF No. 138, at 1]. Accordingly, the undersigned **FINDS** that addressing matters raised in the Motion for Summary Judgment [ECF No. 142] obviates the need for action on the Motion for Sanctions. [ECF No. 138]. Thus, the undersigned **RECOMMENDS** that the Motion for Sanctions [ECF No. 138] be **DENIED as moot**.

### III. RECOMMENDATIONS AND CONCLUSION

Accordingly, for the reasons herein stated, the undersigned **RECOMMENDS** that Defendant's Motion for Summary Judgment [ECF No. 142] be **GRANTED** and that Plaintiff's Amended Complaint [ECF No. 10] be **DISMISSED WITHOUT PREJUDICE** and that this action be stricken from this Court's docket. Further, the undersigned **RECOMMENDS** that Defendant's Motion for Sanctions [ECF No. 138] be **DENIED as moot**.

Any party shall have fourteen (14) days from the date of service of this Report and Recommendation to file with the Clerk of the Court **specific written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection.** A copy of such objections should also be submitted to the presiding United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitations, consistent with LR PL P 12.

**Failure to timely file written objections to the Report and Recommendation as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk of the Court is **DIRECTED** to provide a copy of this Order to parties who appear *pro se* by certified mail, return receipt requested, to the last known addresses as shown on the docket, and all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

Respectfully submitted on September 18, 2024.

_____
MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE