IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


PAOLO FARAH,

        Plaintiff,

    v.                           CIVIL NO. 1:22-CV-153
                                    (KLEEH)

WEST VIRGINIA UNIVERSITY
BOARD OF GOVERNORS,

        Defendant.


MEMORANDUM OPINION AND ORDER
ADOPTING REPORT AND RECOMMENDATION [ECF NO. 167]
AND GRANTING MOTION FOR SUMMARY JUDGMENT [ECF NO. 142]

      Pending is a Report and Recommendation ("R&R") recommending that the Court grant the motion for summary judgment filed by the Defendant, the West Virginia University Board of Governors ("WVUBOG"). For the reasons discussed herein, the R&R is **ADOPTED**, to the extent that it is consistent with this Memorandum Opinion and Order, and the motion for summary judgment is **GRANTED**.

## I. BACKGROUND

      On September 16, 2021, Plaintiff Paolo Farah ("Plaintiff") filed a charge against WVUBOG with the Equal Employment Opportunity Commission ("EEOC"), alleging discrimination on the basis of religion and national origin. Am. Compl., ECF No. 10, at ¶ 7. On February 14, 2022, the charge was amended. Id. On September 12, 2022, Plaintiff received a Notice of the Right to Sue from the EEOC. Id. ¶ 8.

FARAH V. WVUBOG                                                    1:22-CV-153

## MEMORANDUM OPINION AND ORDER
### ADOPTING REPORT AND RECOMMENDATION [ECF NO. 167]
### AND GRANTING MOTION FOR SUMMARY JUDGMENT [ECF NO. 142]

On December 9, 2022, Plaintiff, who was then represented by counsel, filed his original complaint in this action. On March 3, 2023, he filed an amended complaint, asserting five employment discrimination claims against WVUBOG, Samuel Taylor, Cody Stewart, Jesse Richardson, Maja Holmes, Karen Kunz, L. Christopher Plein, Corey Colyer, and Lisa DeFrank-Cole, all of whom were affiliated with West Virginia University. On May 24, 2023, the Court dismissed Colyer and DeFrank-Cole from the case.

On April 24, 2023, the Defendants filed a motion to dismiss and strike certain allegations from the amended complaint. Since February 7, 2024, Plaintiff has represented himself <u>pro</u> <u>se</u>. On March 26, 2024, the Court granted the Defendants' motion to dismiss/strike in part and denied it in part. In its ruling, the Court dismissed the entirety of Counts Three, Four, and Five. It also dismissed all claims against all Defendants except WVUBOG. Accordingly, only Counts One and Two (both against WVUBOG) remain. Count One asserts discrimination based on national origin/race under Title VII of the Civil Rights Act of 1964 ("Title VII"), and Count Two asserts discrimination based on religion under Title VII.

FARAH V. WVUBOG                                                      1:22-CV-153

**MEMORANDUM OPINION AND ORDER**
**ADOPTING REPORT AND RECOMMENDATION [ECF NO. 167]**
**AND GRANTING MOTION FOR SUMMARY JUDGMENT [ECF NO. 142]**

## II.  STANDARD OF REVIEW

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The burden then shifts to the nonmoving party to present "specific facts showing that there is a genuine issue for trial." Blair v. Defender Servs., Inc., 386 F.3d 623, 625 (4th Cir. 2004) (citation omitted).

"When the moving party has carried its burden . . . , its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (citation omitted).  Rather, the Court must ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S.

**MEMORANDUM OPINION AND ORDER**
**ADOPTING REPORT AND RECOMMENDATION [ECF NO. 167]**
**AND GRANTING MOTION FOR SUMMARY JUDGMENT [ECF NO. 142]**

242, 251–52 (1986).  Rule 56(c)(1) sets forth the ways in which a nonmoving party can prove that a material fact is genuinely disputed:

> (A) [by] citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials; or

> (B) [by] showing that the materials cited do not establish the absence . . . of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

At its core, the summary-judgment process examines whether a trial is needed.  See id. at 250.  Summary judgment is proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there [being] no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

Because Plaintiff is proceeding pro se, the Court is required to liberally construe his pleadings.  Estelle v. Gamble, 429 U.S. 97, 106–07 (1976).  The mandated liberal construction means only that if a court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so.  Barnett v. Hargett, 174 F.3d 1128, 1133 (10th Cir. 1999).  However, a court may not construct the plaintiff's legal arguments for him.  Small v. Endicott, 998 F.2d 411, 417–18 (7th Cir. 1993).  Nor is

FARAH V. WVUBOG                                               1:22-CV-153

**MEMORANDUM OPINION AND ORDER**
**ADOPTING REPORT AND RECOMMENDATION [ECF NO. 167]**
**AND GRANTING MOTION FOR SUMMARY JUDGMENT [ECF NO. 142]**

a court required to "conjure up questions never squarely presented [it]." <u>Beaudett v. City of Hampton</u>, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III. <u>REPORT AND RECOMMENDATION AND OBJECTIONS</u>

The Magistrate Judge entered an R&R, recommending that the Court grant summary judgment in favor of WVUBOG. The R&R informed the parties that they had fourteen (14) days from the date of service of the R&R to file "specific written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection." R&R, ECF No. 167, at 12. It further warned them that the "[f]ailure to timely file written objections . . . shall constitute a waiver of <u>de novo</u> review by the District Court and a waiver of appellate review by the Circuit Court of Appeals." <u>Id.</u> On October 11, 2024, Plaintiff filed objections to the R&R. <u>See</u> ECF No. 169. Out of an abundance of caution, the Court will review the R&R <u>de novo</u>.

### IV. <u>UNDISPUTED FACTS</u>

Plaintiff is a faculty member in the Department of Public Administration in the Eberly College of Arts and Sciences at West Virginia University ("WVU"). He is employed pursuant to a nine-month contract. Plaintiff began his employment as a full-time Visiting Assistant Professor in August 2014. He became a tenure-

FARAH V. WVUBOG                                            1:22-CV-153

**MEMORANDUM OPINION AND ORDER**
**ADOPTING REPORT AND RECOMMENDATION [ECF NO. 167]**
**AND GRANTING MOTION FOR SUMMARY JUDGMENT [ECF NO. 142]**

track Assistant Professor in May 2015 with a "critical year" (the year in which a tenure decision must be made) of 2019-2020. See Def. Exh. I (Offer Letter); Exh. J (Mod. to Offer Letter). Plaintiff is originally from Italy, is of Italian national origin, and speaks with an Italian accent. Am. Compl., ECF No. 10, at ¶¶ 4, 9. He is also Jewish. Id. ¶ 4.

WVU has established university-wide guidelines for promotion and evaluation, and each college or department is tasked with elaborating upon them based on the distinctive characteristics of each area of discipline. Def. Exh. B (Procedures for Faculty Appointment, Annual Evaluation, Promotion, and Tenure), ECF No. 142-2, at WVUBOG001712. In accordance with these guidelines, tenure-track faculty are reviewed for promotion in their designated critical year. Id. at WVUBOG001705. The critical year for tenure-track faculty is generally the sixth year of employment and is set forth in the appointment letter provided to each tenure-track faculty member. Id.; Def. Exh. C (Faculty Development and Evaluation Manual), ECF No. 142-3, at WVUBOG001752. Promotions in rank when the critical year does not apply, such as promotions to Full Professor, are discretionary. Def. Exh. B (Procedures for Faculty Appointment, Annual Evaluation, Promotion, and Tenure), ECF No. 142-2, at WVUBOG001705. Ordinarily, the interval between

6

**MEMORANDUM OPINION AND ORDER
ADOPTING REPORT AND RECOMMENDATION [ECF NO. 167]
AND GRANTING MOTION FOR SUMMARY JUDGMENT [ECF NO. 142]**

promotions is at least five years.  Id. at WVBOG001706; Def. Exh.
C (Faculty Development and Evaluation Manual), ECF No. 142-3, at
WVUBOG001753.

       The faculty evaluation process is both evaluative and
developmental and consists of three components: (1) annual
evaluations, (2) promotion evaluations, and (3) tenure
evaluations.  Def. Exh. B (Procedures for Faculty Appointment,
Annual Evaluation, Promotion, and Tenure), ECF No. 142-2, at
WVUBOG001700-01.  Annual evaluations are conducted by the
department chair and the Faculty Evaluation Committee ("FEC") and
form the basis for any annual merit salary adjustments.  Id. at
WVUBOG001701, WVUBOG001708.  Faculty are assessed in the areas of
teaching, research, and service as either "excellent," "good,"
"satisfactory," or "unsatisfactory."  Id. at WVUBOG001711,
WVUBOG001719.  These assessment descriptors are then assigned a
numerical rating (4.5 points for "excellent," 3 for "good," 1 for
"satisfactory," 0 for "unsatisfactory"), which are then scored to
determine any merit increases.  Def. Exh. C (Faculty Development
and Evaluation Manual), ECF No. 142-3, at WVUBOG001749.  Only
faculty members whose performance is assessed as "unsatisfactory"
in any area of assignment will receive no performance-based
increase for that portion of their assignment.  Id.

FARAH V. WVUBOG                                                    1:22-CV-153

**MEMORANDUM OPINION AND ORDER**
**ADOPTING REPORT AND RECOMMENDATION [ECF NO. 167]**
**AND GRANTING MOTION FOR SUMMARY JUDGMENT [ECF NO. 142]**

Additionally, the FECs and deans evaluate faculty during years of potential promotion. Id. at WVUBOG001737. The recommendations for faculty promotions are reviewed de novo at each level by the FEC, department chair, college FEC, college dean, and, ultimately, the Provost. Def. Exh. D (Aff. of Christopher Staples), ECF No. 142-4, at ¶ 4. The Provost typically issues written decisions on promotions and/or tenure in May of each year. Id.

Faculty salaries are governed by BOG Faculty Rule 4.4. The Rule provides various reasons for compensation adjustments, including promotions, continued academic achievement, performance, market adjustments, critical retention adjustments, and supplemental pay adjustments. Def. Exh. E, BOG Rule 4.4, at WVUBOG001758-60. Departments and/or colleges determine compensation adjustments after taking into account department and/or college procedures, in consultation with the Provost. Id. at WVUBOG001759.

Policies governing types of leave available to faculty are found in the Faculty Handbook and BOG Faculty Rule 4.5. The leave available to a faculty member depends on whether he or she is appointed under a nine-month or twelve-month contract. Only faculty members with a twelve-month contract are eligible for

8

FARAH V. WVUBOG                                                    1:22-CV-153

### MEMORANDUM OPINION AND ORDER
### ADOPTING REPORT AND RECOMMENDATION [ECF NO. 167]
### AND GRANTING MOTION FOR SUMMARY JUDGMENT [ECF NO. 142]

parental leave.  Def. Exh. F (Faculty Handbook), ECF No. 142-6, at WVUBOG 001769.  Faculty members with a nine-month contract do not accrue sick or annual leave, but they may be eligible for a modification of duties for one semester, with no reduction in salary or benefits, for the birth of a child or other "significant personal circumstances."  Id.; Def. Exh. G (BOG Rule 4.5), ECF No. 142-7, at WVUBOG001761.  A "significant personal circumstance" is defined under BOG Faculty Rule 4.5 as a "personal situation, as determined by the Provost, that has, or will likely have, significant impact on a Faculty member's productivity including, but not limited to, new parental responsibilities, caring for a parent, responding to serious illness of the Faculty member or someone in their immediate family, or some other extenuating circumstance."  Def. Exh. G (BOG Rule 4.5), ECF No. 142-7, at WVUBOG001764.  A request for a modification of duties must be made within one year of the qualifying event.  Id. at WVUBOG001762.

Pursuant to BOG Faculty Rule 4.3, faculty members are eligible for sabbatical leave after completing at least six years of full-time employment.  Def. Exh. H (BOG Rule 4.3), ECF No. 142-8, at WVUBOG 001765.  A maximum of two semesters may be taken for sabbatical leave.  Id.  A faculty member on sabbatical leave will receive one-half of his or her full salary.  Id. at WVUBOG001766.

FARAH V. WVUBOG                                                    1:22-CV-153

**MEMORANDUM OPINION AND ORDER**
**ADOPTING REPORT AND RECOMMENDATION [ECF NO. 167]**
**AND GRANTING MOTION FOR SUMMARY JUDGMENT [ECF NO. 142]**

While on sabbatical leave, faculty members may only accept remunerative employment with written consent of the Provost.  Id.

In March 2021, Plaintiff requested a modification of duties for five specific events: (1) the birth of his child in May 2018; (2) a miscarriage his wife suffered in February 2020; (3) a second miscarriage his wife suffered in August 2020; (4) his wife's diagnosis as a high-risk pregnancy; and (5) the expected birth of his child in August 2021.  Def. Exh. L (March 2021 Request for Modification of Duties), ECF No. 142-13.  Based on these events, Plaintiff requested a modification of duties for both the fall 2022 and spring 2023 semesters.  Plaintiff's request was denied for a number of reasons.  Def. Exh. D (Aff. of Christopher Staples), ECF No. 142-4, at ¶ 5; Def. Exh. M (Emails), ECF No. 142-14.  Plaintiff's request was denied for several reasons. First, the request was not made within one year of the birth of his child in 2018.  Second, the request was not limited to one semester for related events (i.e., caring for his wife during her pregnancy and the subsequent birth of their child).  Third, while sympathetic to the difficulty of experiencing a miscarriage, the Provost, who has sole discretion to determine what qualifies as a "significant personal circumstance," determined these events did not qualify for a modification of duties.  Exh. M (Emails), ECF

FARAH V. WVUBOG                                                    1:22-CV-153

**MEMORANDUM OPINION AND ORDER**
**ADOPTING REPORT AND RECOMMENDATION [ECF NO. 167]**
**AND GRANTING MOTION FOR SUMMARY JUDGMENT [ECF NO. 142]**

No. 142-14; Exh. D (Affidavit of Christopher Staples), ECF No.
142-4 at ¶ 5.

In June 2021, Plaintiff submitted a revised request for a
modification of duties limited to the expected birth of his child
in 2021.  This request was granted for the 2022 spring semester.
Def. Exh. N (Email), ECF No. 142-15; Exh. D. (Aff. of Christopher
Staples), ECF No. 142-4, at ¶ 6.  Accordingly, Plaintiff received
a paid modification of duties and was excused from teaching in the
2022 spring semester.  When Plaintiff submitted his revised June
2021 application for a modification of duties, his application for
sabbatical leave for the 2021-2022 academic year was pending.  Def.
Exh. O (Sabbatical Leave Application), ECF No. 142-16.  Given that
Plaintiff requested both a modification of duties and sabbatical
leave in the fall 2021 semester, he was given options to defer his
approval for one or both.  Def. Exh. D (Aff. of Christopher
Staples), ECF No. 142-4, at ¶ 7.  Plaintiff chose to apply his
modification of duties to the 2022 spring semester and defer his
sabbatical leave until the 2022-2023 academic year.  Id.

Plaintiff did not teach any courses during the 2021 fall
semester, he received a modification of duties in the 2022 spring
semester, and he took a sabbatical leave for the full 2022-2023
academic year.  Id. at ¶ 8; Def. Exh. P (Productivity Report), ECF

FARAH V. WVUBOG                                          1:22-CV-153

MEMORANDUM OPINION AND ORDER
ADOPTING REPORT AND RECOMMENDATION [ECF NO. 167]
AND GRANTING MOTION FOR SUMMARY JUDGMENT [ECF NO. 142]

No. 142-17.  Despite not teaching any courses, Plaintiff received his full salary for the 2021 fall semester.  Def. Exh. D (Aff. of Christopher Staples), ECF No. 142-4, at ¶ 9.  In accordance with BOG Faculty Rule 4.5, Plaintiff received his full salary for the 2022 spring semester while his duties were modified.  Id.  In accordance with BOG Faculty Rule 4.3, Plaintiff chose to take sabbatical leave for the full 2022-2023 academic year and receive one-half of his nine-month faculty salary.  Id.  During his sabbatical leave, Plaintiff obtained outside paid employment at the University of Pittsburgh while he continued to be paid his one-half salary at WVU.  Id.; Def. Exh. Q (Outside Consulting Arrangement Approval Form), ECF No. 142-18.

During his employment with WVU, Plaintiff has received one of the highest nine-month faculty base salaries in the Department.  Def. Exh. R, Salary Spreadsheet (Sealed), ECF No. 146.  In 2014, Plaintiff earned a nine-month faculty base salary with initial start-up funds of $97,333, which was more than the faculty base salary of any other faculty member in his department.  Id.  Even after the removal of his start-up funds in 2015, Plaintiff continued to receive one of the highest nine-month faculty base salaries in the department, except for one tenured Full Professor with approximately 21 more years of service at WVU than Plaintiff.

FARAH V. WVUBOG                                               1:22-CV-153

**MEMORANDUM OPINION AND ORDER**
**ADOPTING REPORT AND RECOMMENDATION [ECF NO. 167]**
**AND GRANTING MOTION FOR SUMMARY JUDGMENT [ECF NO. 142]**

Id.; Def. Exh. D (Aff. of Christopher Staples), ECF No. 142-4, at ¶ 14.  Over the course of his employment, Plaintiff received competitive merit and critical retention raises, as well as promotional adjustments.  See Def. Exh. R, Salary Spreadsheet (Sealed), ECF No. 146

Throughout Plaintiff's employment, he has received positive annual evaluations from the FEC and the department chair, and his contributions to the areas of teaching, research, and service were predominately rated as either "good" or "excellent."  Def. Exh. K (Annual and Promotion Evaluations), ECF No. 142-11.  During relevant years of eligibility for promotion in rank, Plaintiff was recommended for promotion by the dean of the Eberly College, whose recommendations were adopted by the Provost.  Specifically, in May 2020, Plaintiff was promoted to Associate Professor and awarded tenure.  Id. at WVUBOG000242.  In May 2023, Plaintiff was promoted to Full Professor.  Id. at WVUBOG000294.

## V.    DISCUSSION

In an earlier ruling, the Court struck a number of allegations from the amended complaint, including the denial of Plaintiff's tenure application in 2017, along with any alleged events that took place before November 20, 2020.  The Court has determined that Plaintiff is now relying on the following factual allegations

FARAH V. WVUBOG                                                        1:22-CV-153

**MEMORANDUM OPINION AND ORDER**
**ADOPTING REPORT AND RECOMMENDATION [ECF NO. 167]**
**AND GRANTING MOTION FOR SUMMARY JUDGMENT [ECF NO. 142]**

to support Counts One and Two: employees of WVU "preferred" his colleague to him, excluded him, mocked his accent, criticized his work, and criticized him for taking leave; his colleagues received better evaluations than he received; he received smaller salary increases than his colleagues received; he was treated differently with respect to his application for modification of duties; and he was denied a promotion in February 2023. For the reasons discussed below, WVUBOG is entitled to summary judgment on Counts One and Two.

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, . . . religion, . . . or national origin." 42 U.S.C. § 2000e-2(a)(1). "Absent direct evidence, the elements of a prima facie case of discrimination under Title VII are: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010) (citation omitted), aff'd, 566 U.S. 30 (2012). When "plaintiffs have based their allegations completely upon a comparison to an employee from a non-protected class, . . . the validity of their

FARAH V. WVUBOG                                                    1:22-CV-153

**MEMORANDUM OPINION AND ORDER**
**ADOPTING REPORT AND RECOMMENDATION [ECF NO. 167]**
**AND GRANTING MOTION FOR SUMMARY JUDGMENT [ECF NO. 142]**

prima facie case depends upon whether that comparator is indeed similarly situated." Haywood v. Locke, 387 F. App'x 355, 359 (4th Cir. 2010) (unpublished) (citation omitted).

If the plaintiff establishes a prima facie case of discrimination, then the burden of production shifts to the employer to articulate a legitimate nondiscriminatory reason for its action. Guessous v. Fairview Prop. Invs., LLC, 828 F.3d 208, 217 (4th Cir. 2016) (citation omitted). If the employer satisfies this burden, then the plaintiff must prove by a preponderance of the evidence that the employer's purportedly neutral reasons were a pretext for discrimination. Id. Here, Plaintiff cannot establish a prima facie case of discrimination under Title VII on the basis of religion, race, or national origin.

**A.   Even if true, Plaintiff's allegations that employees of WVU "preferred" his colleague to him, excluded him, mocked his accent, criticized his work, or criticized him for taking leave do not constitute adverse employment actions under Title VII.**

Plaintiff alleges that WVU hired Matthew Barnes, a male born in the United States, at the same time it hired Plaintiff, even though Barnes had not completed his Ph.D., which was required. Am. Compl., ECF No. 10, at ¶ 14. Plaintiff alleges that Margaret Stout, another professor at WVU, told Plaintiff that the department "preferred" Barnes to Plaintiff. Id. He further asserts that

**FARAH V. WVUBOG**                                                              **1:22-CV-153**

### MEMORANDUM OPINION AND ORDER
### ADOPTING REPORT AND RECOMMENDATION [ECF NO. 167]
### AND GRANTING MOTION FOR SUMMARY JUDGMENT [ECF NO. 142]

beginning in 2014, the department invited Barnes to social events, meetings, and gatherings, but it did not invite Plaintiff.  Id. ¶ 15.  Plaintiff asserts that WVU removed him (Plaintiff) from departmental communications and newsletters, giving the impression to readers that he no longer worked at WVU.  Id. ¶ 28.

Plaintiff asserts that in or around April 2021, he complained to Maya Holmes and a dean at WVU about an instance when Holmes mocked his accent and commented that Plaintiff had "miscommunicated" something.  Id. ¶ 20.  He claims that his colleagues asked him the origins of his last name and commented that it did not sound Italian, which prompted Plaintiff to inform them that he is Jewish.  Id. ¶ 21.  Plaintiff also alleges that WVU employees criticized him for taking time to visit his family in Italy, while Margaret Stout, an American, would visit her family in Arizona without criticism.  Id. ¶ 22.  Finally, Plaintiff asserts that Karen Kunz, Margaret Stout, Christopher Plein, and Maja Holmes sharply criticized his work and routinely removed his contributions from department projects and tasks.  Id. ¶ 24.

The United States Court of Appeals for the Fourth Circuit has limited qualifying "adverse employment actions" in Title VII discrimination cases to acts that "'constitute[] a significant change in employment status, such as hiring, firing, failing to

16

FARAH V. WVUBOG                                                    1:22-CV-153

**MEMORANDUM OPINION AND ORDER**
**ADOPTING REPORT AND RECOMMENDATION [ECF NO. 167]**
**AND GRANTING MOTION FOR SUMMARY JUDGMENT [ECF NO. 142]**

promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'"  Hoyle v. Freightliner, LLC, 650 F.3d 321, 337 (4th Cir. 2011) (quoting Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998)); see also Holland v. Wash. Homes, Inc., 487 F.3d 208, 219 (4th Cir. 2007) ("An adverse employment action is a discriminatory act that adversely affects the terms, conditions, or benefits of the plaintiff's employment.") (internal citations and quotation marks omitted).  To the extent Plaintiff asserts that employees of WVU preferred Barnes over him, socially excluded him, mocked his accent, criticized his work, or criticized him for taking leave, the Court finds as a matter of law that these actions do not constitute adverse employment actions.  There is no evidence in the record that these actions, even if true, adversely affected a term, condition, or benefit of employment.  Accordingly, Plaintiff cannot rely upon them to support a claim of unlawful discrimination under Title VII.[1]

---

[1] Plaintiff does not allege in the amended complaint that WVUBOG is liable for a hostile work environment, but regardless, the Court finds that he has not alleged facts that are sufficiently severe or pervasive to support such a claim.  See Perkins v. Int'l Paper Co., 936 F.3d 196, 207-08 (4th Cir. 2019) (harassment must be "sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere").

FARAH V. WVUBOG                                               1:22-CV-153

**MEMORANDUM OPINION AND ORDER**
**ADOPTING REPORT AND RECOMMENDATION [ECF NO. 167]**
**AND GRANTING MOTION FOR SUMMARY JUDGMENT [ECF NO. 142]**

> **B.  Plaintiff has produced no evidence that his colleagues received better evaluations than he received, and even if did produce sufficient evidence, it would not constitute an adverse employment action.**

Plaintiff asserts that the FEC rated his performance as worse than his American and non-Jewish colleagues, despite his consistent performance and accomplishments. Am. Compl., ECF No. 10, at ¶ 23. He asserts that in or around February and March 2021, he was a member of the FEC with access to faculty files, annual reports, and records, and he noticed a disparity in his colleagues' annual evaluations and assessments for promotion when compared to his own. Id. at ¶ 25. WVUBOG argues that Plaintiff has produced no evidence in support of this argument, and even if the allegation were true, differences in evaluations do not constitute adverse employment actions. The Court agrees.

WVUBOG has produced evidence that Plaintiff, overall, received positive evaluations. In response to WVUBOG's motion for summary judgment, it was incumbent upon Plaintiff to produce sufficient evidence to create a genuine issue of material fact, and he has not. Plaintiff has produced no evidence that similarly-situated American-born or non-Jewish employees received better evaluations than he received. Regardless, the Fourth Circuit has held that an unfavorable performance evaluation does not constitute an adverse employment action if not used "as a basis to

18

FARAH V. WVUBOG                                              1:22-CV-153

**MEMORANDUM OPINION AND ORDER**
**ADOPTING REPORT AND RECOMMENDATION [ECF NO. 167]**
**AND GRANTING MOTION FOR SUMMARY JUDGMENT [ECF NO. 142]**

detrimentally alter the terms or conditions of the recipient's employment." James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 377 (4th Cir. 2004), abrogated on other grounds, Muldrow v. City of St. Louis, Missouri, 144 S. Ct. 967 (2024); see also Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 652 (4th Cir. 2002) (plaintiff's "fully acceptable" performance rating, while lower than previous ratings, did not constitute adverse employment action). Accordingly, Plaintiff cannot rely on any alleged differences in evaluations to support a claim of unlawful discrimination under Title VII.

> **C.  Plaintiff has produced no evidence that he received smaller salary increases than his similarly-situated American-born or non-Jewish colleagues received.**

Plaintiff asserts that WVUBOG gave smaller salary increases to him than it gave to similarly-situated American-born or non-Jewish colleagues. Am. Compl., ECF No. 10, at ¶ 27. WVUBOG states that this is false and that Plaintiff has produced no evidence of it. The Court agrees that Plaintiff has not met his burden. WVUBOG has produced evidence that during Plaintiff's employment with WVU, he has received one of the highest nine-month faculty base salaries in his department. In opposing WVUBOG's motion, Plaintiff needed to produce sufficient evidence to create a genuine issue of material fact, and he has not done so. Plaintiff has not

19

FARAH V. WVUBOG                                          1:22-CV-153

**MEMORANDUM OPINION AND ORDER**
**ADOPTING REPORT AND RECOMMENDATION [ECF NO. 167]**
**AND GRANTING MOTION FOR SUMMARY JUDGMENT [ECF NO. 142]**

produced any evidence that WVUBOG gave him smaller salary increases than it gave to similarly-situated American-born or non-Jewish colleagues. Accordingly, Plaintiff cannot rely on any alleged differences in salary increases to support a claim of unlawful discrimination under Title VII.

> **D.   Plaintiff has produced no evidence that similarly-situated American-born or non-Jewish employees were treated differently with respect to requests for modification of duties.**

As discussed above, in March 2021, Plaintiff requested a modification of duties for five specific events, and his request was denied. To the extent that Plaintiff argues that this was an act of discrimination, his claim fails as a matter of law. WVUBOG has produced evidence explaining why, pursuant to BOG Faculty Rule 4.5, Plaintiff's request was denied. In response, Plaintiff was required to produce sufficient evidence to create a genuine issue of material fact, and he has not done so. Plaintiff has produced no evidence that a similarly-situated American-born or non-Jewish employee was treated differently under Rule 4.5 than he was treated. Without any such evidence, WVUBOG is entitled to judgment as a matter of law.

FARAH V. WVUBOG                                                      1:22-CV-153

**MEMORANDUM OPINION AND ORDER**
**ADOPTING REPORT AND RECOMMENDATION [ECF NO. 167]**
**AND GRANTING MOTION FOR SUMMARY JUDGMENT [ECF NO. 142]**

> **E.    Plaintiff has produced no evidence that WVUBOG failed to
> promote him to Full Professor in February 2023.**

Plaintiff alleges that on February 1, 2023, the FEC denied
his promotion to Full Professor, stating that he needed to meet
the standards of "extraordinary contributions" in three areas:
teaching, research, and service.  Am. Compl., ECF No. 10, at ¶ 56.
He asserts that the "normal" university standard, however, is to
show "significant contributions" in two areas and "reasonable
contribution" in one area.  Id.  Plaintiff asserts that Christopher
Plein was promoted to full professor with 7-10 publications in 13
years, but Plaintiff was denied a promotion to full professor with
15-18 publications in 3 years.  Id.  He also states that the FEC
received 7 external reviewer letters from R-1 universities, all
unequivocally    recommending    Plaintiff's    promotion    to    full
professor, in comparison to Plein's 4 letters or Margaret Stout's
5 letters, some of which are very negative.  Id.

WVUBOG argues that this allegation is "simply false."  First,
WVUBOG asserts that the FEC does not have the authority to decide
faculty promotions.  WVUBOG argues that those decisions lie with
the Provost, who considers recommendations from the department,
the college committee, and the dean.  Second, WVUBOG argues that
the dean, upon his de novo review of Plaintiff's academic file,
recommended him for promotion on March 15, 2023.  Agreeing, the

FARAH V. WVUBOG                                                    1:22-CV-153

**MEMORANDUM OPINION AND ORDER**
**ADOPTING REPORT AND RECOMMENDATION [ECF NO. 167]**
**AND GRANTING MOTION FOR SUMMARY JUDGMENT [ECF NO. 142]**

Provost awarded Plaintiff a promotion to Full Professor on May 11, 2023.  Third, WVUBOG argues that promotions are not awarded until May, at the end of each academic year.  Accordingly, WVUBOG argues that there is no evidence to support Plaintiff's theory that he was eligible for promotion to Full Professor in February 2023 or was denied the same.

The Court agrees with WVUBOG that Plaintiff has not met his burden.  In responding to WVUBOG's motion for summary judgment, Plaintiff needed to produce sufficient evidence to create a genuine issue of material fact, and he did not.  He has not produced any facts to show that he was, in fact, denied a promotion in February 2023.  Accordingly, Plaintiff cannot rely on an alleged failure to promote in February 2023 to support a claim of unlawful discrimination under Title VII.

## VI.  CONCLUSION

After reviewing the amended complaint, WVUBOG's motion for summary judgment, and the relevant briefs, the Court finds that WVUBOG is entitled to judgment as a matter of law.  Plaintiff has not produced any evidence to support a valid claim for discrimination under Title VII, much less created a genuine issue of material fact.  There is no need for a trial.  Accordingly, the Court **ORDERS** as follows:

FARAH V. WVUBOG                                                      1:22-CV-153

### MEMORANDUM OPINION AND ORDER
### ADOPTING REPORT AND RECOMMENDATION [ECF NO. 167]
### AND GRANTING MOTION FOR SUMMARY JUDGMENT [ECF NO. 142]

- The R&R is **ADOPTED** [ECF No. 167], to the extent that it is consistent with this Memorandum Opinion and Order;

- WVUBOG's motion for summary judgment is **GRANTED** [ECF No. 142];

- Counts One and Two are **DISMISSED WITH PREJUDICE;**

- The motion for sanctions and motions in limine are **DENIED AS MOOT** [ECF Nos. 138, 161, 162, 164, 165];

- The entire amended complaint is now **DISMISSED WITH PREJUDICE;**

- The case is **STRICKEN** from the Court's active docket; and

- The Clerk **SHALL** enter a separate judgment order.

It is so **ORDERED.**

The Clerk is directed to transmit copies of this Memorandum Opinion and Order to counsel of record by email and to the pro se Plaintiff by certified mail, return receipt requested.

DATED: March 3, 2025

*Tom S Kleeh*
_____
THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA